Exhibit C



**Department of the Treasury**
**Internal Revenue Service**
**Small Business/Self Employed**
4330 Watt Avenue, SA-5165

Date:
10/31/2023
Person to contact:
Name: Alexandra Hicks
Employee ID number: 1002857253
Telephone: 209-900-6736
Fax: 855-242-3733
Hours: 8:00 a.m. - 4:30 p.m.
Taxpayer ID number:

Form:
941
Tax period(s) ended and Claim amount(s):
202103

Response due date:
11/30/2023



Dear: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

We examined your adjusted or claim for refund return and propose:

Full disallowance, as shown in the enclosed examination report(s), Form 4666, *Summary of Employment Tax Examination,* Form 4668, *Employment Tax Examination Change Report,* or Form 4667, *Examination Changes - Federal Unemployment Tax,* if applicable. You can find an explanation of why we didn't allow your claim in full below or on the attached Form 886-A, *Explanation of Items.* If you accept our findings, sign and return the enclosed Form 2297, *Waiver of Statutory Notification of Claim Disallowance,* and Form 3363, *Acceptance of Proposed Disallowance of Claim for Refund or Credit,* in the enclosed envelope.

**Reason for disallowance**
See attached Form 886-A for reason.

If you disagree with our decision, you can request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still disagree with our decision, you can request an Appeals conference by filing a small case request or a formal written protest (depending on the amount you owe). The enclosed Publication 5, *Your Appeal Rights and How To Prepare a Protest If You Don't Agree,* explains how to request an Appeals conference.

If you don't respond by the date listed in the heading of this letter, we'll process your case based on the adjustments shown in the enclosed examination report(s) and Form 886-A or the explanations given above.

**Letter 5376 (4-2014)**
Catalog Number 66176X
Exh. C
Complaint

If you have questions, you can contact the person whose name and telephone number are listed at the top of this letter.

Thank you for your cooperation.

Sincerely,

*Robert Chang*

Robert Chang
Group Manager

Enclosure(s):
Form 2504 -S
Form 886-A
Form 4666

Form 4668
Form 2297
Form 3363
Publication 594
Publication 5
Envelope

cc:

Letter 5376 (4-2014)
Catalog Number 66176X

Exh. C
Complaint

2

| **Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment** *(Employment Tax Adjustments Not Subject to IRC 7436; Worker Classification or Section 530 Issues Not Addressed in this Exam)* | | Date received by Internal Revenue Service |
|---|---|---|

| Taxpayer(s) name | D/B/A | | SSN/EIN |
|---|---|---|---|
| ██████ | | | |

| Address of taxpayer(s) *(number, street)* | City/Town | | State | ZIP code |
|---|---|---|---|---|
| █████ | | | ██ | |

## Adjustment to Tax, Credits and Penalties

| Tax Period Ended | Return Form Number | Kind of Tax, Credit, and Internal Revenue Code Section | Amount of Tax | Credit Increase *(Decrease)* | Penalty |
|---|---|---|---|---|---|
| 3/31/20-12/31/20 | 941 | CARES Act Employee Retention Credit | | ███████ | |
| 3/31/21-12/31/21 | 941 | CARES Act Employee Retention Credit, ARP Employee Retention Credit, 3134 | | ███████ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | **Total** | | (2,604,460.24) | |

I consent to the immediate assessment (increase in tax and penalties and/or decrease in credits) and the collection of any such amounts. In addition, I accept any overassessment (decrease in tax and penalties and/or increase in credits) shown above. I also agree to any interest as provided by law.

| Sign Here ▶ | | Date |
|---|---|---|
| Sign Here ▶ | | Date |
| Sign Here ▶ By | Title | Date |

Note:

If you consent to the assessment of the amounts shown in this agreement, your signature will expedite our adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

The examination of your employment tax returns as reflected on this agreement did not include an examination for employment tax purposes of whether any individuals should be treated as employees.

**Who Must Sign**

If you are making this agreement for a partnership, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed w

## Memo: Abatement amount under IRC 3402(d) and/or IRC 3102(f)(3) - See explanation on Form 4666

| Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement | Tax Period Ended | Return Form Number | IRC Code | Credit for Abatement |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Form **2504-S** (Rev. 10-2017 Catalog Number 52471Z  publish.no.irs.gov  Department of the Treasury - **Internal Revenue Service**

Exh. C
Complaint

# Summary of Employment Tax Examination

| Name and address of employer | | Type of report |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓ | | ☐ Delinquent tax  (return not filed)    ☐ Increase (decrease) in tax  (return filed) |
| | | ☐ Agreed  (this report is subject to review and you will be notified  by the Director when it is accepted) |
| | | ☐ Unagreed |
| | | ☑ Non-7436 adjustments |
| **Employer Identification Number** ▓▓▓▓▓ | **Date of report** 10/31/2023 | ☐ 7436 adjustments (worker classification issues) |
| | | ☐ 7436 adjustments (wage issues) |

Following is a summary of the results of my examination of your returns as shown on the attached pages of this report.

## Tax, Credits and Penalties

| a | b | c | d | e | | f | g |
|---|---|---|---|---|---|---|---|
| Calendar Year | Return Form Number | Delinquent Tax, Increase (Decrease) In Tax | Increase (Decrease) in Allowed Credits | **Penalty** | | Total Adjustment and Penalties (c-d+e) | Page Number of Report |
| | | | | Code Section | Amount | | |
| 2020 | 941 | | ▓▓▓▓▓ | | | ▓▓▓▓▓ | 2 to 5 |
| 2021 | 941 | | ▓▓▓▓▓ | | | ▓▓▓▓▓ | 6 to 9 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total ▶ | | | ▓▓▓▓▓ | | | ▓▓▓▓▓ | |

Other Information

This does not constitute an income tax examination
On 12/23/21 you filed claim Form 941-X, Adjusted Employer's QUARTERLY Federal Tax Return or Claim for Refund, or an informal claim for a refund of $1,096,460.30 for tax period 202103.
As a result of our examination, your claim was disallowed in full.

**Form 2504-S, non-Section 7436 issues:**
Employee Retention Credit

**The examination of your employment tax returns as reflected on this report did not include an examination for employment**

**tax purposes of whether any individuals should be treated as employees of the taxpayer.**

| Examiner's name ▓▓▓▓ | Area ▓▓▓▓ |
|---|---|

Form **4666** (Rev. 10-2017)     Catalog Number 41874S     publish.no.irs.gov     Department of the Treasury - **Internal Revenue Service**

Exh. C
Complaint

# Employment Tax Examination Changes Report

Return form number

941

| Name of employer | Employer Identification Number | Calendar year |
|---|---|---|
| ▮ | ▮ | 2020 |

| Address of employer | Total tax plus penalty or (decrease) in tax | Last quarter of this examination |
|---|---|---|
| ▮ | Total increase or (decrease) in credits | 12/31/2021 |
| | ▮ | |

| Examination discussed with *(name and title)* | ☐ Agreed *(Subject to acceptance by the Director)* |
|---|---|
| | ☐ Unagreed |

This Form 4668 contains *(check only one box)*
☑ Non-7436 adjustments   ☐ 7436 adjustments *(worker classification issues)*   ☐ 7436 adjustments (wage issues)

| | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|
| 1. Total social security and Medicare tax adjustment *(from Schedule of Adjustments, Line 12)* | | | | |
| 2. Social security and Medicare tax adjustment under IRC 3121(q) *(from Schedule of Adjustments, Line 13)* | | | | |
| 3. Total income tax withholding *(from Schedule of Adjustments Line 20)* | | | | |
| 4. Delinquent tax or increase *(decrease)* in tax *(sum of Lines 1, 2 and 3)* | | | | |
| 5. Net increase *(decrease)* in credits *(from Schedule of Adjustments, Line 34)* | | ▮ | | |
| 6. Penalty code section 6651(a)(1) | | | | |
| 7. Penalty code section 6651(a)(2) | | | | |
| 8. Penalty code section 6656 | | | | |
| 9. Penalty code section _____ | | | | |
| 10. Total penalty *(sum of Lines 6, 7, 8 and 9)* | | | | |
| 11. Maximum tax available for abatement under IRC 3402(d) | | | | |
| 12. Maximum tax available for abatement under IRC 3102(f)(3) | | | | |

| Examiner's name | Group number | Business operating division | Date |
|---|---|---|---|
| ▮ | ▮ | | 10/31/2023 |

5

Exh. C
Complaint

# Schedule of Adjustments

| Name of employer | Employer Identification Number | Calendar year 2020 |
|---|---|---|

### Adjustment to Social Security, Medicare and Additional Medicare Wages and Tax

| | IRS Ref | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 1. Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | | | | |
| | 073 | 2.90% | | | | |
| 2. Qualified sick leave wage adjustment subject to tax under IRC 3101(a) (for leave taken after 3/31/2020 and before 4/1/2021) | 200 | 6.20% | | | | |
| 3. Qualified family leave wage adjustment subject to tax under IRC 3101(a) (for leave taken after 3/31/2020 and before 4/1/2021) | 201 | 6.20% | | | | |
| 4. Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
| | 079 | 1.74% | | | | |
| 5. Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
| | 079 | 2.03% | | | | |
| 6. Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 12.40% | | | | |
| | 073 | | | | | |
| 7. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) | 074 | 0.90% | | | | |
| 8. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) and 3509(a) | 079 | 0.18% | | | | |
| 9. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) and 3509(b) | 079 | 0.36% | | | | |
| 10. Other adjustments to social security, Medicare and Additional Medicare wages | | | | | | |
| 11. Other adjustments to social security, Medicare and Additional Medicare tax | | | | | | |
| 12. Total social security, Medicare and Additional Medicare tax adjustment (sum of Lines 1 through 10 x rates plus Line 11) | 112 | | | | | |
| 13. Social security and Medicare tax adjustment under IRC 3121(q) | 114 | | | | | |

### Adjustment to Wages and Tax for Income Tax Withholding

| | IRS Ref | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 14. Income tax withholding wage adjustment subject to tax under IRC 3402 | | 22.00% | | | | |
| | | Actual | | | | |
| 15. Income tax withholding wage adjustment subject to rates under IRC 3509(a) | 079 | 1.50% | | | | |
| 16. Income tax withholding wage adjustment subject to rates under IRC 3509(b) | 079 | 3.00% | | | | |
| 17. Other income tax withholding wage adjustment | | | | | | |
| 18. Actual income tax withheld but not previously reported | | | | | | |
| 19. Other adjustment to income tax withholding | | | | | | |
| 20. Total income tax (sum of Lines 14 through 17 x rates plus Line 18 and Line 19) | 111 | | | | | |

Form **4668** (Rev. 6-2022)    Catalog Number 23275Z    publish.no.irs.gov    Department of the Treasury - **Internal Revenue Service**

6

Exh. C
Complaint

# Schedule of Adjustments (Continued)

| Name of employer | | Employer Identification Number | | | Calendar year |
|---|---|---|---|---|---|
| | | | | | 2020 |

## Adjustment to Credits Against the Tax

| | IRS Ref | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|
| 21. Increase *(decrease)* in non-refundable portion for employee retention credits | 203 | | | | |
| 22. Increase (decrease) in non-refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 202 | | | | |
| 23. Increase (decrease) in non-refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 281 | | | | |
| 24. Increase (decrease) in non-refundable portion of COBRA premium assistance credit | 282 | | | | |
| 25. Increase *(decrease)* in qualified small business payroll tax credit for increasing research activities | 119 | | | | |
| 26. Increase *(decrease)* in other non-refundable credits | | | | | |
| 27. **Total non-refundable credits** *(sum of Lines 21 through 26) -* | | | | | |
| 28. Increase *(decrease)* in refundable portion for employee retention credits | 296 | | | | |
| 29. Increase (decrease) in refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 299 | | | | |
| 30. Increase (decrease) in refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 271 | | | | |
| 31. Increase (decrease) in refundable portion of COBRA premium assistance credit | 276 | | | | |
| 32. Increase (decrease) to other refundable credits | | | | | |
| 33. Total refundable credits *(sum of Lines 28 through 32)* | | | | | |
| 34. **Net Increase *(decrease)* in credits *(sum of lines 27 and 33)*** | | | | | |

Form **4668** (Rev. 6-2022)   Catalog Number 23275Z   publish.no.irs.gov   Department of the Treasury - **Internal Revenue Service**

7

Exh. C
Complaint

## Schedule of Adjustments (Continued)

| Name of employer | Employer Identification Number | Calendar year |
|---|---|---|
| | | 2020 |

### Additional Information About the Adjustment to Credits

| | | IRS Ref | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 35. | Increase (decrease) in qualified wages paid after 3/12/2020 and before 4/1/2020 for the employee retention credit | 208 | | | | |
| 36. | Increase (decrease) in qualified wages paid after 3/31/2020 for the employee retention credit | 206 | | | | |
| 37. | Increase (decrease) in qualified health plan expenses allocable to qualified employee retention wages paid after 3/12/2020 and before 4/1/2020 | 209 | | | | |
| 38. | Increase (decrease) in qualified health plan expenses allocable to qualified employee retention wages paid after 3/31/2020 | 207 | | | | |
| 39. | Increase (decrease) in qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 284 | | | | |
| 40. | Increase (decrease) in qualified health plan expenses allocable to qualified sick leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 204 | | | | |
| 41. | Increase (decrease) in qualified health plan expenses allocable to qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 285 | | | | |
| 42. | Increase (decrease) in amounts under certain collectively bargained agreements allocable to qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 286 | | | | |
| 43. | Increase (decrease) in qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 287 | | | | |
| 44. | Increase (decrease) in qualified health plan expenses allocable to qualified family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 205 | | | | |
| 45. | Increase (decrease) in qualified health plan expenses allocable to qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 288 | | | | |
| 46. | Increase (decrease) in amounts under certain collectively bargained agreements allocable to qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 289 | | | | |

Form **4668** (Rev. 6-2022)   Catalog Number 23275Z   publish.no.irs.gov   Department of the Treasury - **Internal Revenue Service**

8

Exh. C
Complaint

# Employment Tax Examination Changes Report

| | Return form number |
| --- | --- |
| | 941 |

| Name of employer | Employer Identification Number | Calendar year |
| --- | --- | --- |
| ███████████████ █ ███████ | ██████████ | 2021 |

| Address of employer | Total tax plus penalty or (decrease) in tax | Last quarter of this examination |
| --- | --- | --- |
| ██████████ | Total increase or (decrease) in credits | 12/31/2021 |
| | █████████████ | |

| Examination discussed with *(name and title)* | ☐ Agreed *(Subject to acceptance by the Director)* |
| --- | --- |
| | ☐ Unagreed |

This Form 4668 contains *(check only one box)*
☑ Non-7436 adjustments     ☐ 7436 adjustments *(worker classification issues)*     ☐ 7436 adjustments *(wage issues)*

| | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
| --- | --- | --- | --- | --- |
| 1. Total social security and Medicare tax adjustment *(from Schedule of Adjustments, Line 12)* | | | | |
| 2. Social security and Medicare tax adjustment under IRC 3121(q) *(from Schedule of Adjustments, Line 13)* | | | | |
| 3. Total income tax withholding *(from Schedule of Adjustments Line 20)* | | | | |
| 4. Delinquent tax or increase *(decrease)* in tax *(sum of Lines 1, 2 and 3)* | | | | |
| 5. Net increase *(decrease)* in credits *(from Schedule of Adjustments, Line 34)* | | ███████████████████ | | |
| 6. Penalty code section 6651(a)(1) | | | | |
| 7. Penalty code section 6651(a)(2) | | | | |
| 8. Penalty code section 6656 | | | | |
| 9. Penalty code section _____ | | | | |
| 10. Total penalty *(sum of Lines 6, 7, 8 and 9)* | | | | |
| 11. Maximum tax available for abatement under IRC 3402(d) | | | | |
| 12. Maximum tax available for abatement under IRC 3102(f)(3) | | | | |

| Examiner's name | Group number | Business operating division | Date |
| --- | --- | --- | --- |
| ███████ | ████ | | 10/31/2023 |

Form **4668** (Rev. 6-2022)     Catalog Number 23275Z     publish.no.irs.gov     Department of the Treasury - Internal Revenue Service

9

Exh. C
Complaint

# Schedule of Adjustments

| Name of employer | Employer Identification Number | Calendar year |
|---|---|---|
| ███████████ | █████ | 2021 |

## Adjustment to Social Security, Medicare and Additional Medicare Wages and Tax

|  | IRS Ref | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 1. Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | | | | |
|  | 073 | 2.90% | | | | |
| 2. Qualified sick leave wage adjustment subject to tax under IRC 3101(a) (for leave taken after 3/31/2020 and before 4/1/2021) | 200 | 6.20% | | | | |
| 3. Qualified family leave wage adjustment subject to tax under IRC 3101(a) (for leave taken after 3/31/2020 and before 4/1/2021) | 201 | 6.20% | | | | |
| 4. Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
|  | 079 | 1.74% | | | | |
| 5. Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
|  | 079 | 2.03% | | | | |
| 6. Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 12.40% | | | | |
|  | 073 | | | | | |
| 7. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) | 074 | 0.90% | | | | |
| 8. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) and 3509(a) | 079 | 0.18% | | | | |
| 9. Additional Medicare wage and/or tip adjustment subject to tax under IRC 3101(b)(2) and 3509(b) | 079 | 0.36% | | | | |
| 10. Other adjustments to social security, Medicare and Additional Medicare wages | | | | | | |
| 11. Other adjustments to social security, Medicare and Additional Medicare tax | | | | | | |
| 12. Total social security, Medicare and Additional Medicare tax adjustment (sum of Lines 1 through 10 x rates plus Line 11) | 112 | | | | | |
| 13. Social security and Medicare tax adjustment under IRC 3121(q) | 114 | | | | | |

## Adjustment to Wages and Tax for Income Tax Withholding

|  | IRS Ref | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 14. Income tax withholding wage adjustment subject to tax under IRC 3402 | | 22.00% | | | | |
|  | | Actual | | | | |
| 15. Income tax withholding wage adjustment subject to rates under IRC 3509(a) | 079 | 1.50% | | | | |
| 16. Income tax withholding wage adjustment subject to rates under IRC 3509(b) | 079 | 3.00% | | | | |
| 17. Other income tax withholding wage adjustment | | | | | | |
| 18. Actual income tax withheld but not previously reported | | | | | | |
| 19. Other adjustment to income tax withholding | | | | | | |
| 20. Total income tax (sum of Lines 14 through 17 x rates plus Line 18 and Line 19) | 111 | | | | | |

Form **4668** (Rev. 6-2022)     Catalog Number 23275Z     publish.no.irs.gov          Department of the Treasury - **Internal Revenue Service**

Exh. C
Complaint

## Schedule of Adjustments (Continued)

| Name of employer | | Employer Identification Number | | Calendar year 2021 |
|---|---|---|---|---|

### Adjustment to Credits Against the Tax

| | IRS Ref | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|
| 21. Increase *(decrease)* in non-refundable portion for employee retention credits | 203 | | ▮▮▮ | ▮▮▮ | |
| 22. Increase (decrease) in non-refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 202 | | | | |
| 23. Increase (decrease) in non-refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 281 | | | | |
| 24. Increase (decrease) in non-refundable portion of COBRA premium assistance credit | 282 | | | | |
| 25. Increase *(decrease)* in qualified small business payroll tax credit for increasing research activities | 119 | | | | |
| 26. Increase *(decrease)* in other non-refundable credits | | | | | |
| 27. **Total non-refundable credits** *(sum of Lines 21 through 26)* - | | | ▮▮▮ | ▮▮▮ | |
| 28. Increase *(decrease)* in refundable portion for employee retention credits | 296 | | ▮▮▮ | ▮▮▮ | |
| 29. Increase (decrease) in refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 299 | | | | |
| 30. Increase (decrease) in refundable portion of credit for qualified sick and family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 271 | | | | |
| 31. Increase (decrease) in refundable portion of COBRA premium assistance credit | 276 | | | | |
| 32. Increase (decrease) to other refundable credits | | | | | |
| 33. Total refundable credits *(sum of Lines 28 through 32)* | | | ▮▮▮ | ▮▮▮ | |
| 34. **Net Increase** *(decrease)* in credits *(sum of lines 27 and 33)* | | | ▮▮▮ | ▮▮▮ | |

Exh. C
Complaint

# Schedule of Adjustments (Continued)

| Name of employer | | Employer Identification Number | | Calendar year |
|---|---|---|---|---|
| | | | | 2021 |

## Additional Information About the Adjustment to Credits

| | | IRS Ref | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 35. | Increase (decrease) in qualified wages paid after 3/12/2020 and before 4/1/2020 for the employee retention credit | 208 | | | | |
| 36. | Increase (decrease) in qualified wages paid after 3/31/2020 for the employee retention credit | 206 | | | | |
| 37. | Increase (decrease) in qualified health plan expenses allocable to qualified employee retention wages paid after 3/12/2020 and before 4/1/2020 | 209 | | | | |
| 38. | Increase (decrease) in qualified health plan expenses allocable to qualified employee retention wages paid after 3/31/2020 | 207 | | | | |
| 39. | Increase (decrease) in qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 284 | | | | |
| 40. | Increase (decrease) in qualified health plan expenses allocable to qualified sick leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 204 | | | | |
| 41. | Increase (decrease) in qualified health plan expenses allocable to qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 285 | | | | |
| 42. | Increase (decrease) in amounts under certain collectively bargained agreements allocable to qualified sick leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 286 | | | | |
| 43. | Increase (decrease) in qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 287 | | | | |
| 44. | Increase (decrease) in qualified health plan expenses allocable to qualified family leave wages for leave taken after 3/31/2020 and before 4/1/2021 | 205 | | | | |
| 45. | Increase (decrease) in qualified health plan expenses allocable to qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 288 | | | | |
| 46. | Increase (decrease) in amounts under certain collectively bargained agreements allocable to qualified family leave wages for leave taken after 3/31/2021 and before 10/1/2021 | 289 | | | | |

12

Exh. C
Complaint

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| ▮▮▮▮▮▮▮▮ | | ▮▮▮▮ | 202006 - 202109 |

Employee Retention Credit:

| Tax Periods Under Examination | ERC Per Return | ERC Per Exam | ERC Amount Disallowed (Allowed) |
|---|---|---|---|
| 202006 | ▮▮▮ | $0.00 | ▮▮▮ |
| 202009 | ▮▮▮ | $0.00 | ▮▮▮ |
| 202012 | ▮▮▮ | $0.00 | ▮▮▮ |
| 202103 | ▮▮▮ | $0.00 | ▮▮▮ |
| 202106 | ▮▮▮ | $0.00 | ▮▮▮ |
| 202109 | ▮▮▮ | $0.00 | ▮▮▮ |
| Total | ▮▮▮ | $0.00 | ▮▮▮ |

Issue:

Whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, is entitled to the Employee Retention Credit (ERC) for the amounts claimed on Form 941-X for the calendar quarters 202006, 202009, 202012, 202103, 202106, and 202109.

Facts:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and files a 1120-S, US Income Tax Return for an S-Corporation.

Per the State of Information filed with the State of California, there are two officer's ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ own 100% interest in the corporation.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a full-service urgent care center with ▮ locations open in the examination years in: ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮

Taxpayers' income tax return is on a fiscal year beginning October 1 and ending September 30. For the fiscal years ending 9/30/19, 9/30/20, 9/30/21, and 9/30/22, taxpayer reported gross receipts of ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ respectively.

For ERC purposes, the taxpayer was a small employer; therefore, qualified wages are all wages paid to any employee whether or not they are providing services during any period of full or partial suspension.

Based on the Essential Critical Infrastructure Workforce advisory list, taxpayers' business was considered essential.

13

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># **Explanation of Items** | Schedule number or<br>exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | 202006 - 202109 |

In response to IDR#1 issued on August 3, 2023, and IDR#2 issued on September 28, 2023, the Power of Attorney provided a written letter explaining the taxpayers position on their eligibility to claim the Employee Retention Credit.

The taxpayer is claiming entitlement to ERC based on modifications which resulted in a partial suspension of business operations.

In response to IDR#1 issued on August 3, 2023, the taxpayer provided the following governmental orders and guidance:

- California: Executive Order N-25-20 – Effective March 12, 2020
- California: Executive Order N-33-20 – Effective March 19, 2020
- California Department of Public Health guidance for resuming deferred and preventive health care on April 27, 2020.

Executive Order N-25-20 required all residents to heed to any orders and guidance of state and local public health officials, including, but not limited to the imposition of social distancing measures. California Department of Public Health guidance required a limit in the number of patients in the waiting area, limited the space between patients to a minimum of 6 feet, and physical distance requirements in work and commons areas.

The taxpayer contends that the California Department of Public Health guidance, which limited the number of patients in the waiting area, limited the space between patients to a minimum of 6 feet, and physical distancing requirements in work and common areas, required the taxpayer to make modifications to their business operations, which caused a nominal effect.

In the same written letter provided by the Power of Attorney, the taxpayer also contends that they experienced a partial suspension of business operations as the taxpayer was forced to close one of its clinics because the patient count and revenue did not support its operations.

Lastly, the taxpayer also contends that they experienced a partial suspension of business operations as the taxpayer experienced shortages in personal protective equipment, which was mandated by local authorities during patient visits. The taxpayer had to conduct early closures of clinics that exhausted all inventory of PPE and could not continue operations until PPE was replenished.

14

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

Law:

Summary of Applicable Laws:

On March 13, 2020, the President of the United States issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak. On or about March 15, 2020, States and local government entities began to issue Orders or other types of proclamations to implement shutdowns to prevent the spread of COVID-19, including the closure of schools and non-essential businesses. Recognizing the significant economic impact the closure of schools and businesses would have on the economy, Congress and Trump Administration (including the Department of Treasury and the Internal Revenue Service) worked rapidly to develop a variety of packages to reduce the negative economic impact COVID-19 would have on the country.

The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), P.L. 116-136, 134 Stat. 281, enacted on March 27, 2020, was one of the initial pieces of legislation enacted in response to COVID-19. Section 2301 of the CARES Act, as originally enacted, provides for an employee retention credit for eligible employers that pay qualified wages, including certain health plan expenses, to some or all employees after March 12, 2020, and before January 1, 2021. The ERC was specifically designed to encourage employers experiencing a significant decline in gross receipts and/or whose trade or business was fully or partially suspended as a result of a governmental order related to COVID-19 to keep employees on their payroll through a refundable employment tax credit.

The CARES Act was subsequently amended and modified by the Certainty and Disaster Tax Relief Act of 2020 (Relief Act), enacted as Division EE of the Consolidated Appropriations Act, 2021, P.L. 116-260, 134 Stat. 1182, on December 27, 2020. Section 206 of the Relief Act adopted amendments and technical changes to section 2301 for qualified wages paid after March 12, 2020, and before January 1, 2021, primarily expanding eligibility for certain employers to claim the credit. Section 206 is effective retroactive to the effective date of section 2301. Section 207 of the Relief Act, which is effective for calendar quarters beginning after December 31, 2020, further amends section 2301 to extend the application of the employee retention credit to qualified wages paid after December 31, 2020, and before July 1, 2021, and to modify the calculation of the credit amount for qualified wages paid during that time.
The ERC was further extended pursuant to section 3134 of the Internal Revenue Code (Code), enacted by section 9651 of the American Rescue Plan Act of 2021 (the ARP), Pub. L. No. 117-2, 135 Stat. 4 (March 11, 2021). Section 3134 of the Code provides for the ERC, effective for calendar quarters beginning after June 30, 2021, for wages paid after June 30, 2021, and before January 1, 2022.

Finally, the **ERC** was subsequently amended by the Infrastructure Investment and Jobs Act,

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | | Schedule number or<br>exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

Pub. L. No. 117-58, (IIJA) to terminate the ERC retroactively for all businesses other than recovery startup businesses.

In general, to qualify for the ERC, an employer must have operated a trade or business in 2020 or a calendar quarter in 2021 and meets one of following three scenarios:

1. Their business operations must have been fully or partially suspended by government order due to COVID-19 in 2020 or the first three calendar quarters of 2021.
2. Met the Gross Receipts Test:
   a. For 2020, had a significant decline in gross receipts (defined as period beginning with calendar quarter in which gross receipts are less than 50 percent of gross receipts in the same calendar quarter in 2019 and ending in the calendar quarter after the first calendar quarter in which gross receipts are greater than 80 percent of gross receipts in the same calendar quarter in 2019).
   b. For the first three calendar quarters of 2021, had a decline in gross receipts (defined as quarter in which gross receipts are less than 80 percent of the same calendar quarter in 2019 or through an alternative quarter election rule as set forth in Notice 2021-23).
3. Was a Recovery Startup Business for the 3rd and 4th quarter 2021 only.

For wages paid in 2020, the percent of qualified wages eligible for credit equals 50% of qualified wages ($10,000 per employee for the year including certain health care expenses). For employers who averaged 100 or fewer average full-time employees in 2019, qualified wages include only those qualified wages and health care expenses paid to employees providing services and not providing services. For employers who averaged greater than 100 average full-time employees in 2019, qualified wages include those wages (including health care expenses) paid to employees not providing services.

For wages paid in 2021, legislation increased the maximum percentage of qualified wages to 70% ($10,000 per employee per calendar quarter including certain health care expenses) for qualified wages paid between January 1 and June 30, 2021. For 2021, employers who averaged 500 or fewer average full-time employees in 2019, qualified wages include those amounts paid to employees providing services and not providing services. For 2021, employers with greater than 500 average full-time employees in 2019, only wages paid to employees who were not providing services are considered qualified wages.

Notice 2021-20 provides guidance on "Eligible Employers". For purposes of the employee retention credit, "trade or business" has the same meaning as when used in section 162 of the Code other than the trade or business of performing services as an employee. Under section 162(a), an activity does not qualify as a trade or business unless its primary purpose is to make a profit and it is carried on with regularity and continuity. A single taxpayer can have

16

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended<br><br>202006 - 202109 |

more than one trade or business, or multiple activities that nevertheless are only a single trade or business. Whether two activities are two trades or businesses or only one is a question of fact. Whether two activities are two trades or businesses or only one, the Tax Court primarily considers the degree of organizational and economic interrelationship of various undertakings, the business purpose which is or might be served by carrying on the various undertakings separately or together, and the similarity of the various undertakings. <u>Patients Mutual Assistance Collective Corporation v. Commissioner</u>, 151 T.C. No. 11 (2018); 26 C.F.R. § 1.183-1(d).

Summary of Issued Guidance:

With each enactment, Congress authorized the Secretary (or the Secretary's delegate) to provide such regulations or other guidance as may be necessary to carry out the purposes of the credit, including regulations or other guidance: (1) to prevent the avoidance of the purposes of the limitations; (2) to minimize compliance and record-keeping burdens with respect to the credit; (3) to provide for waiver of penalties for failure to deposit amounts in anticipation of the allowance of the credit; (4) to recapture the benefit of the credit in cases where there is a subsequent adjustment to the credit; and (5) to ensure that the wages taken into account for the ERC conform with other credits eligible to be claimed by employers.

This broad grant of authority was provided to Treasury and the Internal Revenue Service to issue guidance (through regulation or other means) in a prompt and expedient manner to provide tax credits to employers that were negatively financially impacted by the pandemic while also ensuring compliance with the limitations and requirements of the Act, as well as legislative intent.

Shortly after enactment, on April 23, 2020, the Joint Committee on Taxation issued a report explaining Congressional intent in enacting the CARES Act. Joint Committee on Taxation, Description of the Tax Provisions of Public Law 116-136, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.

Treasury did not issue regulations addressing entitlement to, or calculation of, the ERC. Rather, consistent with statutory authority allowing the Secretary to issue "other guidance as may be necessary to carry out the purpose of the credit" and consistent with the need to encourage Eligible Employers to keep their employees on their payroll during the COVID-19 pandemic and allow Eligible Employers to claim the credit for qualified wages paid beginning on March 13, 2020, the Service issued guidance in coordination with Treasury in the form of Frequently Asked Questions beginning on April 29, 2020. With each legislative act, the Service continued seeking the highest level of Treasury review and continued updating the postings as the need for answers to frequently asked questions arose.

17

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># **Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | 202006 - 202109 |

On March 1, 2021, Notice 2021-20 was issued incorporating the FAQs into more formal guidance. Notice 2021-20 provides guidance on the ERC as it applies to qualified wages paid after March 12, 2020, and before January 1, 2021. As further legislation was enacted, irs.gov was updated to address additional frequently asked questions and additional guidance was provided in subsequent Notices.

The following is a list of guidance issued addressing the ERC:

- For Wages Paid After March 12, 2020, and before Jan. 1, 2021
- Notice 2021-20
- Notice 2021-49
- Revenue Procedure 2021-33
- For Wages Paid After Dec. 31, 2020, and before July 1, 2021
- Notice 2021-23
- Notice 2021-49
- Revenue Procedure 2021-33
- For Wages Paid After June 30, 2021, and before Oct. 1, 2021
- Notice 2021-49
- Revenue Procedure 2021-33
- For Wages Paid After Sept. 30, 2021, and before Jan. 1, 2022
- Notice 2021-49
- Notice 2021-65

To the extent that legislation did not modify the original provisions of the ERC, Notice 2021-20 governs the ERC for all periods.

Reliance on IRS Public Guidance

As stated above, Treasury did not issue regulations addressing the ERC. Rather, due to the timing of each enactment and the almost immediate (and often retroactive) modification to the ERC, FAQS and Notices were the chosen form of guidance issued to carry out the purpose of the credit. Each piece of public guidance issued, including FAQs, Notices, Press Releases, Tax Forms and Instructions were coordinated with the highest levels of the Treasury Department. In Skidmore v. Swift & Co., (S Ct 1944) 323 U.S. 134, the Supreme Court set forth the standard for deference to sub-regulatory guidance, which requires consideration of the thoroughness evident in its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. The Court held that agency rulings, interpretations, and opinions "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

18

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | | Schedule number or<br>exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

As stated previously, the Federal government's response to the COVID-19 pandemic was swift and continuously evolving. The CARES Act was enacted on March 27, 2020 (only 14 days after the Trump Administration declared a nationwide emergency due to COVID-19 causing the Federal government and state and local entities to implement shutdown orders). Since under the CARES Act, Eligible Employers became entitled to claim the ERC for wages paid after March 12, 2020, the Service worked closely with Congress and the highest levels of the Department of Treasury to develop, and issue published guidance. Subsequent to enactment of the CARES Act, three additional pieces of legislation were enacted to extend, modify and/or retroactively eliminate the ERC for certain taxpayers. With each legislative enactment, the Service was required to issue prompt guidance to Taxpayers so as to implement the legislation enabling Taxpayer's to claim the ERC when available for each calendar quarter.

Pertinent Statute and Notice Provisions:

Section 2301 of the CARES Act allows a credit (employee retention credit or credit) against applicable employment taxes for eligible employers, including tax-exempt organizations, that pay qualified wages, including certain health plan expenses, to some or all employees after March 12, 2020, and before January 1, 2021. Section 206 of the Relief Act adopts amendments and technical changes to section 2301 of the CARES Act for qualified wages paid after March 12, 2020, and before January 1, 2021, primarily relating to who may claim the credit.[1]

Section 207 of the Relief Act amends section 2301 of the CARES Act to extend the application of the employee retention credit to qualified wages paid after December 31, 2020, and before July 1, 2021, and to modify the calculation of the credit amount for qualified wages paid during that time.

Section 9651 of the ARP Act enacted section 3134 of the Code which provides an employee retention credit for wages paid after June 30, 2021, and before January 1, 2022. Section 80604 of the IIJA amended section 3134(n) of the Code to provide that the employee retention credit under section 3134 shall apply only to wages paid after June 30, 2021, and before October 1, 2021 (or, in the case of wages paid by an eligible employer which is a recovery startup business, January 1, 2022). Additionally, effective for calendar quarters beginning after September 30, 2021, section 80604 of the IIJA amended the definition of recovery startup business under section 3134(c)(5) of the Code to remove the requirement that a recovery startup business not otherwise be an eligible employer due to a full or partial suspension of operations or a decline in gross receipts.

Exh. C
Complaint

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

Claiming the Employee Retention Credit and Accessing Funds in Anticipation of the Credit

An employer that is an eligible employer as defined in section 2301(c)(2) of the CARES Act and that, after March 12, 2020, and before March 31, 2021, pays qualified wages, as defined in section 2301(c)(3) of the CARES Act, is entitled to claim the employee retention credit against the taxes imposed on employers by section 3111(a) of the Internal Revenue Code (Code) (employer's share of the Old Age, Survivors, and Disability Insurance (social security tax)), after these taxes are reduced by any credits claimed under section 3111(e) and (f) of the Code, sections 7001 and 7003 of the Families First Coronavirus Response Act (FFCRA), Pub. L. No. 116-127, 134 Stat. 178 (March 18, 2020), and section 303(d) of the Relief Act. Eligible employers subject to the Railroad Retirement Tax Act (RRTA) are entitled to take the employee retention credit against the taxes imposed on employers by section 3221(a) of the Code (Tier 1 tax under the RRTA) that are attributable to the rate in effect under section 3111(a) of the Code, after these taxes are reduced by any credits allowed under sections 7001 and 7003 of the FFCRA and section 303(d) of the Relief Act.

For purposes of the employee retention credit under section 3134 of the Code, section 3134(c)(1) defines "applicable employment taxes" to mean the taxes imposed under section 3111(b) of the Code (employer's share of Hospital Insurance (Medicare) tax), or so much of the portion of Tier 1 tax under the RRTA that is equivalent to the employer's share of Medicare tax. Section 3134(b)(2) provides that the credit allowed under section 3134(a) with respect to a calendar quarter will not exceed the applicable employment taxes, reduced by any credits allowed under sections 3131 and 3132 of the Code (tax credits under the ARP for qualified sick leave wages and qualified family leave wages, respectively, paid with respect to leave taken by employees beginning on April 1, 2021, through September 30, 2021), on the wages paid with respect to the employment of all the employees of the eligible employer for such calendar quarter. Section 3134(b)(3) provides that if any amount of the credit under section 3134(a) exceeds the limitation under section 3134(b)(2) for any calendar quarter, such excess will be treated as an overpayment that will be refunded under sections 6402(a) and 6413(b) of the Code.

Accordingly, for the third and fourth quarters of 2021, eligible employers are entitled to claim the employee retention credit against the employer's share of Medicare tax, or the portion of Tier 1 tax under the RRTA that is equivalent to the employer's share of Medicare tax, after these taxes are reduced by any credits allowed under sections 3131 and 3132 of the Code, with the excess refunded under section 6402 or 6413 of the Code.

Other Rules Related to the Employee Retention Credit

Section 2301(e) of the CARES Act provides that rules similar to section 280C(a) of the Code apply for purposes of the employee retention credit. Section 280C(a) of the Code generally disallows a deduction for the portion of wages or salaries paid or incurred equal to the sum of

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

certain credits determined for the taxable year. Accordingly, a similar deduction disallowance applies under section 2301(e) of the CARES Act with regard to the employee retention credit, such that an employer's deduction for qualified wages, including qualified health plan expenses, is reduced by the amount of the employee retention credit.

Section 2301(e) of the CARES Act also provides that rules similar to the rules of section 51(i)(1) of the Code (relating to the work opportunity credit) apply for purposes of the employee retention credit. Section 51(i)(1) provides that wages paid to "related individuals" (within the meaning of section 51(i)(1)) may not be taken into account for determining the credit under section 51(a) of the Code. Accordingly, wages paid to related individuals may not be taken into account for determining qualified wages for the employee retention credit. Similarly, section 2301(h)(1) of the CARES Act provides that an employee will not be included for purposes of computing the employee retention credit for any period that an employer is allowed a work opportunity credit under section 51 with respect to that employee for that period.

Section 2301(h)(2) of the CARES Act states that any wages taken into account in determining the employee retention credit will not be taken into account for purposes of determining the credit allowed under section 45S of the Code (relating to paid and family medical leave). Finally, section 2301(h)(3) of the CARES Act provides that the employee retention credit is treated as a credit described in section 3511(d)(2) of the Code.
The Relief broadened the denial of double benefit rule and applies it to IRC §§ 41, 45A, 45P, 51, and 1396. Otherwise, unless identified above, the same rules apply for each quarter for which the Taxpayer claims ERC.

For purposes of the employee retention credit, "trade or business" has the same meaning as when used in section 162 of the Code other than the trade or business of performing services as an employee. Under section 162(a), an activity does not qualify as a trade or business unless its primary purpose is to make a profit and it is carried on with regularity and continuity. A single taxpayer can have more than one trade or business, or multiple activities that nevertheless are only a single trade or business, for purposes of business. Whether two activities are two trades or businesses or only one, for purposes of business expense deduction from federal income tax, is a question of fact. Whether two activities are two trades or businesses or only one, the Tax Court primarily considers the degree of organizational and economic interrelationship of various undertakings, the business purpose which is or might be served by carrying on the various undertakings separately or together, and the similarity of the various undertakings. Patients Mutual Assistance Collective Corporation v. Commissioner, 151 T.C. No. 11 (2018); 26 C.F.R. § 1.183-1(d).

21

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended<br><br>202006 - 202109 |

Definition of "Qualified Wages"

For purposes of determining "qualified wages," section 2301(c)(5)(A) of the CARES Act provides that the term "wages" generally means wages as defined in section 3121(a) of the Code and compensation as defined in section 3231(e) of the Code. Section 2301(c)(5)(B) of the CARES Act provides that "wages" include amounts paid by an eligible employer to provide and maintain a group health plan (as defined in section 5000(b)(1) of the Code), but only to the extent that the amounts are excluded from the gross income of employees by reason of section 106(a) of the Code. Amounts treated as wages under section 2301(c)(5)(B) of the CARES Act are treated as paid with respect to any employee (and with respect to any period) to the extent the amounts are properly allocable to the employee (and to the period), and, except as otherwise provided by the Secretary of the Treasury (Secretary), the allocation will be treated as proper if made on the basis of being pro rata among periods of coverage. References to "allocable qualified health plan expenses" or "qualified health plan expenses" in this notice are to the health plan expenses described in section 2301(c)(5)(B) of the CARES Act.

Section 2301(c)(3)(A) of the CARES Act provides different definitions of "qualified wages" depending on the size of the employer, which is measured by the average number of full-time employees (within the meaning of section 4980H of the Code) employed by the eligible employer during 2019.

The specific circumstances in which wage payments by an eligible employer will be considered qualified wages depend, in part, on the average number of full-time employees the eligible employer employed during 2019.

Section 2301(c)(3)(A)(i) of the CARES Act provides that if an eligible employer averaged more than 100 employees during 2019 (large eligible employer), qualified wages are those wages paid by the eligible employer with respect to which an employee is not providing services due to circumstances described in section 2301(c)(2)(A)(ii)(I) of the CARES Act (relating to a full or partial suspension of the operation of a trade or business due to a governmental order) or section 2301(c)(2)(A)(ii)(II) of the CARES Act (relating to a significant decline in gross receipts). For large eligible employers, section 2301(c)(3)(B) of the CARES Act limits qualified wages that may be taken into account to the amount that the employee would have been paid for working an equivalent duration during the 30 days immediately preceding the period in which the qualified wages are paid or incurred.

Section 2301(c)(3)(A)(ii) of the CARES Act provides that if an eligible employer averaged 100 or fewer employees in 2019 (small eligible employer), qualified wages are those wages paid by the eligible employer with respect to an employee during any period described in section 2301(c)(2)(A)(ii)(I) of the CARES Act (relating to a calendar quarter for which the operation of a trade or business is fully or partially suspended due to a governmental order) or

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or<br>exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| ▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ | 202006 - 202109 |

during a calendar quarter within the period described in section 2301(c)(2)(A)(ii)(II) of the
CARES Act (relating to a significant decline in gross receipts).

The flush language in section 2301(c)(3)(A) of the CARES Act provides that qualified wages
do not include any wages taken into account for purposes of the credits under sections 7001 or
7003 of the FFCRA.

Under the Relief Act, effective January 1, 2021, the definition of qualified wages was changed
to provide:

> • For an employer that averaged more than 500 full-time employees (previously 100)
> in 2019, qualified wages are generally those wages paid to employees that are not
> providing services because operations were fully or partially suspended or due to the
> decline in gross receipts.
> • For an employer that averaged 500 or fewer full-time employees in 2019, qualified
> wages are generally those wages paid to all employees during a period that operations
> were fully or partially suspended or during the quarter that the employer had a decline
> in gross receipts regardless of whether the employees are providing services.

Section C of Notice 2021-20 provides guidance on the definition of "Qualified Wages". The
term "full-time employee" means an employee who, with respect to any calendar month in
2019, had an average of at least 30 hours of service per week or 130 hours of service in the
month (130 hours of service in a month is treated as the monthly equivalent of at least 30 hours
of service per week), as determined in accordance with section 4980H of the Code. An
employer that operated its business for the entire 2019 calendar year determines the number of
its full-time employees by taking the sum of the number of full-time employees in each
calendar month in 2019 and dividing that number by 12.

An employer that started its business operations during 2019 determines the number of its full-
time employees by taking the sum of the number of full-time employees in each full calendar
month in 2019 in which the employer operated its business and dividing that sum by the
number of full calendar months in 2019 in which the employer operated its business.

An employer that started its business operations during 2020 determines the number of its full-
time employees by taking the sum of the number of full-time employees in each full calendar
month in 2020 in which the employer operated its business and dividing by that number of
months, consistent with the approach described above for employers that began business
operations during 2019.

All entities that are treated as a single employer under the aggregation rules are treated as a
single employer for purposes of determining the employer's average number of employees.

Small eligible employers may treat all wages (other than any wages taken into account under

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | 202006 - 202109 |

sections 7001 and 7003 of the FFCRA) paid after March 12, 2020, and before January 1, 2022, with respect to their employees during any period in the calendar quarter in which the employer's business operations are fully or partially suspended due to a governmental order or during a calendar quarter in which the employer experiences a significant decline in gross receipts as qualified wages.

Payments, including severance payments or other post-termination payments, made to a former employee following termination of employment are not considered qualified wages for purposes of the employee retention credit. Payments may be considered qualified wages only if the payments are made to an employee while employed by the eligible employer. Payments made in connection with a former employee's termination of employment are not qualified wages because they are payments for the past employment relationship and thus are not payments made with respect to an employee during the time for which the employee retention credit may be claimed. Whether an employee has terminated employment is based on all of the facts and circumstances, including whether the employer has treated the employment relationship as terminated for purposes other than the continuation of wage payments.

Governmental Orders

Notice 2021-20 provides guidance on what "orders from an appropriate governmental authority" may be taken into account by an employer for purposes of determining eligibility for the employee retention credit. Notice 2021-20, Q/A- 10 provides that orders, proclamations, or decrees from the Federal government or any State or local government may be taken into account by an employer as "orders from an appropriate governmental authority" only if they limit "commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)" and relate to the suspension of an employer's operation of its trade or business. Orders that are not from the Federal government must be from a State or local government that has jurisdiction over the employer's operations. These orders are referred to as "governmental orders." Whether orders, proclamations or decrees are governmental orders is determined without regard to the level of enforcement of the governmental order.

Statements from a governmental official, including comments made during press conferences or in interviews with the media, do not rise to the level of a governmental order for purposes of the employee retention credit. Additionally, the declaration of a state of emergency by a governmental authority is not sufficient to rise to the level of a governmental order if it does not limit commerce, travel, or group meetings in any manner. Further, such a declaration that limits commerce, travel, or group meetings, but does so in a manner that does not relate to the suspension of an employer's operation of its trade or business does not rise to the level of a governmental order for purposes of the employer's determination of its eligibility for the employee retention credit.

Exh. C<br>Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer<br>███████████████ | Tax Identification Number *(last 4 digits)*<br>████████ | Year/Period ended<br>202006 - 202109 |

Governmental orders include:

  • An order from the city's mayor stating that all non-essential businesses must close for a specified period;
  • A State's emergency proclamation that residents must shelter in place for a specified period, other than residents who are employed by an essential business and who may travel to and work at the workplace location;
  • An order from a local official imposing a curfew on residents that impacts the operating hours of a trade or business for a specified period;
  • An order from a local health department mandating a workplace closure for cleaning and disinfecting.

Whether the operations of a trade or business are considered essential or non-essential will often vary from jurisdiction to jurisdiction. An employer should determine whether it is operating an essential or non-essential business by referring to the governmental order affecting the employer's operation of its trade or business.

Full or Partial Suspension of Trade or Business Operations

Notice 2021-20, Q/A- 11 through Q/A - 22 provide guidance regarding a full or partial suspension of trade or business operations due to a governmental order related to COVID-19.

Notice 2021-20, Q/A- 11 provides that if a governmental order requires non-essential businesses to suspend operations but allows essential businesses to continue operations, an employer that operates an essential business is not considered to have a full or partial suspension of operations if the governmental order allows all of the employer's operations to remain open. However, an employer that operates an essential business may be considered to have a partial suspension of operations if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order. For example, an employer that maintains both essential and non-essential business operations, each of which are more than nominal portions of the business operations, may be considered to have a partial suspension of its operations if a governmental order restricts the operations of the non-essential portion of the business, even if the essential portion of the business is unaffected. In addition, an essential business that is permitted to continue its operations may, nonetheless, be considered to have a partial suspension of its operations if a governmental order requires the business to close for a period of time during normal working hours.

Solely for purposes of this employee retention credit, a portion of an employer's business operations will be deemed to constitute more than a nominal portion of its business operations if either (i) the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts (both determined using the gross receipts of the same

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | | Schedule number or<br>exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| | | | 202006 - 202109 |

calendar quarter in 2019), or (ii) the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019).

The same rules for determining whether an employer who is not considered an essential business experienced a full or partial suspension of its trade or business. Specifically, if a governmental order requires non-essential businesses to suspend certain operations that do not constitute more than a nominal portion of its business activities, but allows the business to continue other operations will not be considered to have a full or partial suspension of operations if the governmental order allows all of the employer's operations to remain open.

Notice 2021-20, Q/A- 17 and 18 provide guidance regarding circumstances where an employer's workplace is closed due to a governmental order for certain purposes, but the employer's workplace may remain open for other limited purposes.

Q/A-17 provides that the employer's operations would be considered to be partially suspended if, under the facts and circumstances, the operations that are closed are more than a nominal portion of its business operations and cannot be performed remotely in a comparable manner. If all, or all but a nominal portion, of an employer's business operations may continue, but the operations are subject to modification due to a governmental order (for example, to satisfy distancing requirements), such a modification of operations is considered to be a partial suspension of business operations due to a governmental order if the modification required by the governmental order has more than a nominal effect on the business operations under the facts and circumstances.

Q/A- 18 provides the factors should be taken into account in determining whether a modification required by a governmental order has more than a nominal effect on business operations. Q/A- 18 states that the types of modifications that are contemplated by Q/A–17 are those required by a governmental order as a condition of reopening a physical space for business or service to the public. Examples of these modifications include: limiting occupancy to provide for social distancing, requiring services to be performed only on an appointment basis (for businesses that previously offered walk-in service), changing the format of service (for example, restrictions on buffet or self-serve, but not prepackaged or carry-out), or requiring employees and customers to wear face coverings.

The mere fact that an employer must make a modification to business operations due to a governmental order does not result in a partial suspension unless the modification has more than a nominal effect on the employer's business operations. Whether a modification required by a governmental order has more than a nominal effect on the business operations is based on the facts and circumstances. A governmental order that results in a reduction in an employer's ability to provide goods or services in the employer's business operations. For example,

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |
| ██████████████ | ████████ | 202006 - 202109 |

occupancy restrictions at a restaurant with indoor dining service may result in an actual, and more than nominal, reduction of the restaurant's ability to service customers; however, an occupancy restriction at a retailer with sufficient physical space to accommodate its customers regardless of the restriction will likely not result in an actual, and more than nominal, reduction of the retailer's ability to provide goods to its customers.

Decline in Demand

Notice 2021-20, Q/A-13 provides guidance regarding whether a governmental order that causes the customers of a business to stay at home, or otherwise causes a reduction in demand for its products or services, and the business responds to the lack of demand by suspending some or all of its operations, is considered to rise to the level of a suspension of operations due to a governmental order. Q/A- 13 provides that an employer that suspends some or all of its operations because its customers are subject to a government order requiring them to stay at home or otherwise causing a reduction in demand for its products or services is not considered to have a full or partial suspension of its operations due to a governmental order.

Supply Chain Interruption

Notice 2021, Q/A- 12, addresses the impact a governmental order which causes suppliers to a business to suspend their operations. An employer may be considered to have a full or partial suspension of operations due to a governmental order if, under the facts and circumstances, the business's suppliers are unable to make deliveries of critical goods or materials due to a governmental order that causes the supplier to suspend its operations. If the facts and circumstances indicate that the business's operations are fully or partially suspended as a result of the inability to obtain critical goods or materials from its suppliers because they were required to suspend operations, then the business would be considered an eligible employer for calendar quarters during which its operations are fully or partially suspended and may be eligible to receive the employee retention credit.

Voluntary Suspension

Notice 2021-20, Q/A- 14 addresses a voluntary suspension of the operation of a trade or business or voluntary reduction in hours due to COVID-19. If an employer voluntarily suspends operation of a trade or business or voluntarily reduces hours due to COVID-19, the employer is not eligible for the employee retention credit on the basis of a full or partial suspension of its operations.

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | | Schedule number or<br>exhibit |
|---|---|---|---|
| Name of taxpayer<br><br>████████████████████████████ | | Tax Identification Number *(last 4 digits)*<br>████████ | Year/Period ended<br>202006-202109 |

**Government Position:**

The taxpayer claimed ERC in tax periods 202006 – 202109 and claims entitlement to ERC based upon significant modifications to the business operations that were required by the Executive Order and the California Department of Public Health, which caused a partial suspension of operations.



████████████████████████████████████████, is a full-service urgent care center with █
locations open in the examination years in: Colton████████████████████████████████████
████████

The taxpayer contends that the California Department of Public Health guidance, which limited the number of patients in the waiting area, limited the space between patients to a minimum of 6 feet, and physical distancing requirements in work and common areas, required the taxpayer to make modifications to their business operations, which caused a nominal effect.

Q/A- 18 provides the factors that should be taken into account in determining whether a modification required by a governmental order has more than a nominal effect on business operations. Q/A- 18 states that the types of modifications that are contemplated by Q/A–17 are those required by a governmental order as a condition of reopening a physical space for business or service to the public. Examples of these modifications include: limiting occupancy to provide for social distancing, requiring services to be performed only on an appointment basis (for businesses that previously offered walk-in service), changing the format of service (for example, restrictions on buffet or self-serve, but not prepackaged or carry-out), or requiring employees and customers to wear face coverings.

It is the government's position that the mere existence of a modification, including occupancy restrictions and requiring appointments for services, is insufficient. The taxpayer did not establish that the mandated modification had more than a nominal effect on business operations.

In addition, the taxpayer contends that they experienced a partial suspension of business operations as the taxpayer was forced to close one of its clinics because the patient count and revenue did not support its operations.

Notice 2021-20, Q/A- 14 addresses a voluntary suspension of the operation of a trade or business or voluntary reduction in hours due to COVID-19. If an employer voluntarily suspends the operation of a trade or business or voluntarily reduces hours due to COVID-19, the employer is not eligible for the employee retention credit on the basis of a full or partial suspension of its operations.

It is the government's position that since the taxpayer was an essential business and there was no governmental order requiring the suspension of the taxpayer's trade or business, the taxpayer is not eligible

Exh. C
Complaint

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br># Explanation of Items | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended<br>202006-202109 |

for the ERC on the basis of a full or partial suspension.

Lastly, the taxpayer contends that they experienced a partial suspension of business operations as the taxpayer experienced shortages in personal protective equipment, which was mandated by local authorities during patient visits. The taxpayer had to conduct early closures of clinics that exhausted all inventory of PPE and could not continue operations until PPE was replenished.

Notice 2021, Q/A- 12, addresses the impact of a governmental order that causes suppliers to a business to suspend their operations. An employer may be considered to have a full or partial suspension of operations due to a governmental order if, under the facts and circumstances, the business's suppliers are unable to make deliveries of critical goods or materials due to a governmental order that causes the supplier to suspend its operations. If the facts and circumstances indicate that the business's operations are fully or partially suspended as a result of the inability to obtain critical goods or materials from its suppliers because they were required to suspend operations, then the business would be considered an eligible employer for calendar quarters during which its operations are fully or partially suspended and may be eligible to receive the employee retention credit.

It is the government's position that the taxpayer did not provide documentation to substantiate that the suppliers of PPE were unable to make deliveries of critical goods or materials due to a governmental order that caused the supplier to suspend its operations.

Taxpayer's Position:

Taxpayer has not provided their position on the issue yet.

Conclusion:

The ERC was designed to encourage employers to keep employees on their payroll through a refundable employment tax credit during periods when the employer's trade or business was partially shutdown evidenced either by a decline in gross receipts or a full or partial suspension of its trade or business. Contrary to the Taxpayer 's assertions, the Taxpayer did not experience the requisite partial suspension due to modifications of the Taxpayer's trade or business due to a governmental order related to COVID-19.

Therefore, the Taxpayer's claim for ERC for 202006, 202009, 202012, 202103, 202106, and 202109 quarters are disallowed.

Exh. C
Complaint

| Form **2297**<br>(May 2023) | Department of the Treasury - Internal Revenue Service<br>**Waiver of Statutory Notification of Claim Disallowance** |
|---|---|

I, ██████████████ ████████ of _____██████████████_____
    *(name)*        *(SSN or EIN)*           *(number and street)*

████
    *(city or town)*          *(state)*      *(ZIP code)*

waive the requirement under Internal Revenue Code section 6532(a)(1) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

## Claims

| (a)<br>Taxable Period Ended | (b)<br>Kind of Tax | (c)<br>Amount of Claim | (d)<br>Amount of Claim Disallowed |
|---|---|---|---|
| 202103 | CARES Act Employee Retention | ██████████ | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | |
|---|---|---|
| If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.<br><br>For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.<br><br>For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.<br><br>For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.<br><br>For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign. | Your signature | Date signed |
| | Spouse's signature if a joint return was filed | Date signed |
| | Taxpayer's representative sign here | Date signed |
| | Partnership/Corporate name<br>████████████ | |
| | Partners/Corporate officers sign here | Date signed |
| | Title | |
| | Partners/Corporate officers sign here | Date signed |
| | Title | |

**Note:** Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Exh. C
Complaint

| Form **3363** (May 2023) | Department of the Treasury - Internal Revenue Service **Acceptance of Proposed Disallowance of Claim for Refund or Credit** |
|---|---|

Name(s), SSN or EIN, and address of taxpayer(s) *(number, street, city or town, state, ZIP code)*

▮▮▮▮▮▮▮▮▮▮

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
|---|---|---|---|---|---|
| 202103 | 12/23/2021 | CARES Act Employe | ▮▮▮▮▮▮▮ | | |
| | | | | | |
| | | | | | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

| | | |
|---|---|---|
| If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her. | Your signature | Date |
| | Spouse's signature if a joint return was filed | Date |
| | Taxpayer's representative sign here | Date |
| For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed. | Partnership/Corporate name ▮▮▮▮▮▮▮▮ | |
| For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership. | Partners/Corporate officers sign here | Date |
| For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed. | Title | |
| | Partners/Corporate officers sign here | Date |
| For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign. | Title | |

Exh. C
Complaint



# The **IRS** Collection Process

**Publication 594**

This publication provides a general description of the IRS collection process. The collection process is a series of actions that the IRS can take to collect the taxes you owe if you don't voluntarily pay them. The collection process will begin if you don't make your required payments in full and on time, after receiving your bill.

Please keep in mind that this publication is for information only, and may not account for every tax collection scenario. It's also not a technical analysis of tax law and does not include a detailed explanation of your rights. For an explanation of your rights, please see Publication 1, Your Rights as a Taxpayer.

**If you have questions or need help**

Please visit IRS.gov for your tax needs. You can get answers to your tax questions from the Interactive Tax Assistant IRS.gov/ITA. You can also check IRS.gov/Forms-&-Pubs to find all the IRS tax forms and publications mentioned here and the IRS video portal at www.irsvideos.gov to view informational videos on a variety of topics in this publication.

You can also call the number on your bill or visit your local IRS office for assistance. If you don't have a bill, please go to the IRS.gov/payments page and click on View Your Balance or call 1-800-829-1040 (individuals) or 1-800-829-4933 (businesses). Before visiting your local IRS office, check the "Services Provided" and the hours of operation at www.irs.gov/localcontacts. Use the "Office Locator" link by entering your zip code to locate the nearest office which will give you the office address, hours of operation, and services provided.

| | |
|---|---|
| **Overview: Filing a tax return, billing, and collection** | **2** |
| General steps from billing to collection | 2 |
| What you should do when you get an IRS bill | 2 |
| Who to contact for help | 2 |
| **Ways to pay your taxes** | **2** |
| Options for paying in full | 2 |
| Options if you can't pay in full now | 3 |
| If you are unable to pay at this time | 3 |
| How long we have to collect taxes | 3 |
| How to appeal an IRS decision | 4 |
| **If you don't pay on time: Understanding collection actions** | **4** |
| **Collection actions in detail** | **5** |
| Federal Tax Lien | 5 |
| Notice of Federal Tax Lien | 5 |
| Levy: A seizure of property | 6 |
| Summons: Used to secure information | 7 |
| IRS Actions Affecting Passports | 7 |
| **Information for Taxpayers assigned to a Private Collection Agency** | **7** |
| **Information for employers: Collection of employment tax** | **8** |
| **Additional information** | **8** |

Exh. C
Complaint

## Overview: Filing a tax return, billing, and collection

After you file your tax return and/or a final decision is made establishing your correct tax, we record the amount in our records. If you owe, we will send a bill for the amount due, including any penalties and interest. If you don't pay or make arrangements to pay, we can take actions to collect the debt. Our goal is to work with you to resolve your debt before we take collection actions. If your bill is for an individual shared responsibility payment as a result of the Affordable Care Act, the amount owed is not subject to the failure to pay penalty, levies or the filing of a Notice of Federal Tax Lien. However, interest will continue to accrue and the Service may offset federal tax refunds until the balance is paid in full.

### ➔ General steps from billing to collection
**You file your tax return.** Most returns are filed annually (by April 15th) or quarterly (businesses with employees).



1. **If you owe taxes, we will send you a bill.** This is your first bill for tax due. Based on your return, we will calculate how much tax you owe, plus any interest and penalties.



2. **If you don't pay your first bill, we will send you at least one more bill.** Remember, interest and penalties continue to accrue until you've paid your full amount due.



3. **If you still don't pay after you receive your final bill, we will begin collection actions.** Collection actions can range from applying your subsequent tax year refunds to tax due (until paid in full) to seizing your property and assets. This could include an unannounced visit from a Revenue Officer to your home or business. See Role of the Revenue Officer

### ➔ What you should do when you get an IRS bill
**If you agree with the information on the bill,** pay the full amount before the due date. If you can't pay the full amount due, pay as much as you can and visit www.irs.gov/payments to consider our online payment options. Our online payment options include the Online Payment Agreement application which allows you to set up an installment agreement online. If you do not qualify for our online payment options, immediately contact us by calling the telephone number on your bill to explain your situation. You should have your financial information available, including your monthly income and expenses. Based on your ability to pay, we may provide you with alternate payment options such as setting up an installment agreement online.

**If you disagree with the information on the bill,** call the number on it, or visit your local IRS office. Be sure to have a copy of the bill and any tax returns, cancelled checks, or other records that will help us understand why you believe your bill is wrong. If we find that you're right, we will adjust your account and, if necessary, send a revised bill.

**If you don't pay the amount due or tell us why you disagree with it,** we may take collection actions.

**If you are in bankruptcy,** please notify us immediately. The bankruptcy may not eliminate your tax debt, but we may temporarily stop collection. Call the number on your bill or 1-800-973-0424. Have the following information available: the location of court, bankruptcy date, chapter and bankruptcy number.

### ➔ Who to contact for help
#### The Internal Revenue Service
Make IRS.gov your first stop for your tax needs. You can find answers with the Interactive Tax Assistant at IRS.gov/ITA. Please don't hesitate to contact us with any questions you may have. Call the number on your bill or 1-800-829-1040. You can find answers to your questions at IRS.gov or by visiting your local IRS office to speak with an IRS representative in person.

#### Taxpayer Advocate Service
The Taxpayer Advocate Service (TAS) is an independent organization within the Internal Revenue Service that helps taxpayers and protects taxpayer rights. They help taxpayers whose problems with the IRS are causing financial difficulties, who've tried but have not been able to resolve their problems with the IRS, or believe an IRS system or procedure isn't working as it should. Their service is free. Your local advocate's number is at taxpayeradvocate.irs.gov and in your local directory. You can also call them at 1-877-777-4778. For more information about TAS and your rights under the Taxpayer Bill of Rights, go to taxpayeradvocate.irs.gov.

#### Low Income Taxpayer Clinics
Assistance can be obtained from individuals and organizations that are independent from the IRS. IRS Publication 4134, provides a listing of Low Income Taxpayer Clinic List (LITCs) and is available at www.irs.gov. Also, see the LITC page at www.taxpayeradvocate. irs.gov/litcmap. Assistance may also be available from a referral system operated by a state bar association, a state or local society of accountants or enrolled agents or another nonprofit tax professional organization. The decision to obtain assistance from any of these individuals and organizations will not result in the IRS giving preferential treatment in the handling of the issue, dispute or problem. You don't need to seek assistance to contact them. They will be pleased to deal with you directly and help you resolve your situation.

## Ways to pay your taxes

To explore all of your payment options visit IRS.gov/payments. To minimize interest and penalties, we recommend paying your taxes in full. However, if you're unable to pay in full, you can request an Installment Agreement or Offer in Compromise. These payment plans allow you to pay your taxes in installments over time, to pay less than you owe, or both. It's also important to stay current on your payments for future taxes. This means making your estimated tax payments, withholding payments, or federal tax deposits as required by law.

### ➔ Options for paying in full
#### Electronic payments
We offer several electronic payment options. You can pay online, by phone or from your mobile device with the IRS2Go app. Go to IRS. gov/payments for the payment options, telephone numbers and easy secure ways to pay your taxes.

#### IRS Direct Pay
IRS Direct Pay is free and available at IRS.gov/DirectPay, where you can securely pay your taxes directly from your checking or savings accounts without any fees or pre-registration. Schedule payments up to 30 days in advance, and receive instant confirmation that you submitted your payment

#### Debit or credit card
You can pay your taxes by debit or credit card. Both paper and electronic filers can pay their taxes by phone or online through any of the authorized debit and credit card processors. Though the IRS does not charge a fee for this service, the card processors do. Go to IRS.gov/ payments for authorized card processors and their phone numbers.

#### IRS2Go
To pay your federal taxes quickly on the go, use the IRS2Go mobile app. IRS2Go provides easy access to Direct Pay, offering you a free, secure way to pay directly from your checking or savings account. You can also make a debit or credit card payment through an approved payment processor for a fee. You can download IRS2Go from Google Play Store, the Apple App Store or Amazon Appstore, to pay your taxes anytime, anywhere.

#### Electronic Federal Tax Payment System
The Electronic Federal Tax Payment System is a free service that gives taxpayers a safe and convenient way to pay individual and business taxes by phone or online. To enroll or for more information, visit EFTPS. gov or call 800-555-4477.

Exh. C
Complaint

**Cash**

Taxpayers without bank accounts or if cash is their only option can pay using the new PayNearMe option. Because PayNearMe involves a three-step process, the IRS urges taxpayers choosing this option to start the process well ahead of the tax deadline to avoid interest and penalty charges. The IRS offers this option in cooperation with OfficialPayments.com/fed and participating 7-Eleven stores in 34 states. Details,including answers to frequently-asked questions, are at IRS.gov/paywithcash.

**Pay by mail or visit us in person at a local IRS office**

You can mail a check to us at the address listed on your notice or bring it to your local IRS office. Make checks payable to the Department of the Treasury.

➡ **Options if you can't pay in full now**

**Apply for an Installment Agreement (Payment Plan)**

An Installment Agreement with the IRS means that we will allow you to make smaller periodic payments over time if you can't pay the full amount at once. A setup fee applies to all agreements over 120 days. There are several ways to apply for an Installment Agreement:

- **Online, using the Online Payment Agreement application at** www.irs.gov/OPA. You can apply online for a reduced setup fee if the total combined balance of individual income tax, penalty and interest you owe is $50,000 or less. Short-term payment plans of 120-days or less and monthly installment agreements are available. If you own a business and owe $25,000 or less in combined payroll taxes, penalty and interest for the current and prior calendar year, you can also use the Online Payment Agreement to request a installment agreement. To view an instructional video on the Online Payment Agreement application, visit Online Payment Agreement.
- **By phone** Please call the number on your bill or 1-800-829-1040.
- **By mail** Please complete Form 9465, Installment Agreement Request. In addition to Form 9465, if you want to make your payments by payroll deduction, complete Form 2159, Payroll Deduction Agreement. If you owe more than $50,000, you will also need to complete Form 433F, Collection Information Statement. Mail your form to the address on your bill.
- **In person** at your local IRS office near you, please visit www.irs.gov/localcontacts.

If you request a payment plan online you will receive immediate notification if your agreement is approved. If you request a payment plan by mail, you can reduce the accrual of penalties and interest by making voluntary payments until you're notified whether we've accepted your payment plan request. Our acceptance of your interim payments doesn't mean we've approved your request. We will notify you in writing once we've made our decision.

With an Installment Agreement, you can pay by direct debit, through payroll deductions, electronic funds transfer or check. The setup fee is reduced if you make your payments by direct debit. You can also pay a reduced user fee if you meet our low-income guidelines. The reduced fee can even be waived completely or reimbursed if you meet our low-income guidelines. For more information, see Form 13844, Application for Reduced User Fee for Installment Agreements. You do not need to submit the user fee with your installment agreement application. The fee can be taken from the initial payments made once the installment agreement is accepted.

To be eligible for an Installment Agreement, you must file all required tax returns. Prior to approving your Installment Agreement request, we may ask you to complete a Collection Information Statement (Form 433F, 433-A and/or Form 433-B) and provide proof of your financial status. Please have your financial information available if you apply over the phone or at an IRS office. For more information, see Publication 1854, How to Complete a Collection Information Statement (Form 433-A).

If we approve your request, we will still charge applicable interest and penalties until you pay the balance due in full, and may file a Notice of

Federal Tax Lien (see page 5). If we reject your Installment Agreement request, you may request that the Office of Appeals review your case. For more information, see Publication 1660, Collection Appeal Rights.

If you're unable to meet the terms of your approved Installment Agreement, please contact us immediately.

**Apply for an Offer in Compromise**

You may be eligible for an Offer in Compromise if you can't pay the amount you owe in full or through installments. By requesting an Offer in Compromise, you're asking to settle unpaid taxes for less than the full amount you owe. We may accept an Offer in Compromise if:

- We agree that your tax debt may not be accurate,
- You have insufficient assets and income to pay the amount due, or
- Because of your exceptional circumstances, paying the amount due would cause an economic hardship or would be unjust.

For an Offer in Compromise to be considered, you must pay an application fee and make an initial or periodic payment for all Form 656 submissions. However, low income taxpayers may qualify for a waiver of the application fee and initial or periodic payment. For more information, please see the Low-Income Certification form found in Form 656-B, Offer in Compromise Booklet.

Before we can consider your offer, you must file all tax returns you are legally required to file, make all required estimated tax payments for the current year, and make all required federal tax deposits for the current quarter. We can't consider your offer if you are in bankruptcy or and generally if you are currently undergoing an audit.  Use the Offer in Compromise Pre-Qualifier to explore the possibility that the Offer in Compromise program may be a realistic option to resolve your balance due. To apply for an Offer in Compromise, complete one of the following forms:

- Form 656-L, *Offer in Compromise (Doubt as to Liability)* Complete this if there is a genuine dispute as to the existence or amount of the correct taxt debt under the law.

- Form 656, *Offer in Compromise* Complete this if you're unable to pay the amount due, or have an economic hardship, or have another special circumstance that would cause paying the amount due to be unjust.

For more information, see Form 656-B, Offer in Compromise Booklet or visit www.irs.gov/individuals/Offer-in-Compromise-1.

➡ **If you are unable to pay at this time**

**Ask that we delay collection and report your account as currently not collectable**

If you can't pay any of the amount due because payment would prevent you from meeting basic living expenses, you can request that we delay collection until you're able to pay. Prior to approving your request, we may ask you to complete a Collection Information Statement and provide proof of your financial status. Please remember that even if we delay collection, we will still charge applicable penalties and interest until you pay the full amount, and we may file a Notice of Federal Tax Lien (see page 5). We may also request updated financial information during this temporary delay to review your ability to pay.

➡ **How long we have to collect taxes**

We can attempt to collect your taxes up to 10 years from the date they were assessed. However, there are ways this time period can be suspended. For example, by law, the time to collect may be suspended while:

- We're considering your request for an Installment Agreement or Offer in Compromise. If your request is rejected, we will suspend collection for another 30 days, and during any period the Appeals Office is considering your appeal request.
- You live outside the U.S. continuously for at least 6 months. Collection is suspended while you're outside the U.S.
- The tax periods we're collecting on are included in a bankruptcy with an automatic stay. We will suspend collection for the time period we can't collect because of the automatic stay, plus 6 months.

Exh. C
Complaint

- You request a Collection Due Process hearing. Collection will be suspended from the date of your request until a Notice of Determination is issued or the Tax Court's decision is final.
- We're considering your request for Innocent Spouse Relief. Collection will be suspended from the date of your request until 90 days after a Notice of Determination is issued, or if you file a timely petition to the Tax Court, until 60 days after the Tax Court's final decision. If you appeal the Tax Court's decision to a U.S. Court of Appeals, the collection period will begin 60 days after the appeal is filed, unless a bond is posted.

➜ **How to appeal an IRS decision**

You have the right to appeal most collection actions to the IRS Office of Appeals (Appeals). Appeals is separate from and independent of the IRS Collection office that initiates collection actions. Appeals ensures and protects its independence by adhering to a strict policy prohibiting certain communications with the IRS Collection office or other IRS offices, such as discussions regarding the strength or weakness of your case. When an IRS office is to be engaged in discussions, you will be invited to participate in the conference, or provided any written document to give you an opportunity to comment. Your main options for appeals are the following: Collection Due Process or Collection Appeals Program

**Collection Due Process**

The purpose of a Collection Due Process hearing is to have Appeals review collection actions that were taken or have been proposed. After Appeals has made their determination and you do not agree, you can go to court to appeal the Appeals' Collection Due Process determination. You can request a Collection Due Process hearing if you receive any of the following notices:

- Notice of Federal Tax Lien Filing and Your Right to a Hearing
- Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing
- Notice of Jeopardy Levy and Right of Appeal
- Notice of Levy on Your State Tax Refund—Notice of Your Right to a Hearing
- Notice of Levy and of Your Right to a Hearing

To request a Collection Due Process hearing, complete Form 12153, *Request for a Collection Due Process* or Equivalent Hearing or a written request containing the same information as contained in Form 12153, and send it to the address on your notice. You must request a Collection Due Process hearing by the date indicated in the notice we send you (for proposed levies, that date is 30 days from the date of the letter). The request must be filed timely to preserve your right to judicial review of the determination issued in your Collection Due Process hearing. If your request for a Collection Due Process hearing is not timely, you can request an Equivalent Hearing within one year from the date of the notice, but you cannot go to court if you disagree with Appeals' decision.

During a Collection Due Process hearing, the 10-year period for collecting taxes is suspended and we are generally prohibited from seizing (levying) your property, if seizing your property is the subject of the hearing. We are permitted to seize your property during an Equivalent Hearing or a Collection Due Process hearing about filing of a Notice of Federal Tax Lien, but normally we will not seize property during these hearings. The 10-year period for collecting taxes is not suspended during an Equivalent Hearing.

You are entitled to only one Collection Due Process lien hearing and one levy hearing for each tax period or assessment. You are entitled to propose collection alternatives, such as entering into an installment agreement or an offer-in-compromise, for consideration by Appeals in the hearing. It may be necessary for you to submit financial information or tax returns to qualify for such collection alternatives.

All issues should be raised and all necessary supporting information presented to Appeals at the hearing. You are prevented from raising issues during a judicial review that were not properly raised with Appeals in the Collection Due Process hearing. Your Appeals conference may be held by telephone, correspondence, or, if you qualify, in a face-to-face conference at the Appeals office closest to your home or place of business. You may be denied a face-to-face conference if you raise issues that are deemed frivolous or made with a desire solely to delay or impede collection. For a nonexclusive listing of issues identified by the IRS as frivolous, see "The Truth About Frivolous Tax Arguments" on IRS.gov. For more information about Collection Due Process see Publication 1660.

**Collection Appeals Program**

Under the Collections Appeals Program, if you disagree with an IRS employee's decision regarding any levy, seizure, or Notice of Federal Tax Lien filing and want to appeal it, you can ask to have a conference with the employee's manager. If we seize your house, car, or other property in order to sell your interest in the property to apply the proceeds to your tax debt, you must make the request within 10 business days after the Notice of Seizure is given to you or left at your home or business. There is no deadline to request a manager conference when a levy is served for other types of property (such as wages or bank accounts) or a levy or seizure or Notice of Federal Tax Lien filing is proposed. The collection action may go forward if a conference is not requested within a reasonable time period.

If you then disagree with the manager's decision, you may request the IRS Office of Appeals review your case under the Collection Appeals Program as outlined in Publication 1660. If your case is assigned to a Revenue Officer, your request for Appeals consideration should be made within three (3) business days of the conference with the manager or collection actions may resume. You must submit your request for Appeals consideration in writing, preferably on Form 9423, *Collection Appeal Request*. If your case is not assigned to a Revenue Officer, you can appeal the manager's decision in writing or orally and your case will be forwarded to Appeals for review. Your request for Appeals consideration should be made within three (3) business days of the conference with the manager or collection actions may resume.

If you request a conference and are not contacted by a manager or his/her designee within two (2) business days of making the request, you may contact Collection again and request Appeals consideration. If you submit Form 9423, note the date of your request for a conference in Block 15 and indicate that you were not contacted by a manager. The Form 9423 should be received or postmarked within four (4) business days of your request for a conference as collection action may resume. Submit Form 9423 to the Revenue Officer involved in the lien, levy or seizure action.

If you file a Collection Appeals Request and do not agree with Appeals decisions, you cannot proceed to court.

Instances in which you can pursue the Collection Appeals Program include, but aren't limited to:

- Before or after we file a Notice of Federal Tax Lien
- Before or after we seize ("levy") your property
- After we reject, terminate, or propose to terminate your Installment Agreement (a conference with the manager is recommended, but not required). Submit your written Installment Agreement Appeal request, preferably using Form 9423, *Collection Appeal Request*, within the timeframe listed in your notice.

For more information about the Collection Due Process and Collection Appeals Program, please see Publication 1660, Collection Appeal Rights or visit www.irs.gov/Individuals/Appealing-a-Collection-Decision.

## If you don't pay on time: Understanding collection actions

There are several words and phrases particular to the collection process. Here, we've defined some of the most common collection terms:

Exh. C
Complaint

**Federal Tax Lien:** A legal claim against all your current and future property, such as a house or car, and rights to property, such as wages and bank accounts. The lien automatically comes into existence if you don't pay your amount due after receiving your first bill.

**Notice of Federal Tax Lien:** A public notice to creditors. It notifies them that there is a federal tax lien that attaches to all your current and future property and rights to property.

**Levy:** A legal seizure of property or rights to property to satisfy a tax debt. When property is seized ("levied"), it will be sold to help pay your tax debt. If wages or bank accounts are seized, the money will be applied to your tax debt.

**Seizure:** There is no legal difference between a seizure and a levy. Throughout this publication, we will use both terms interchangeably.

**Notice of Intent to Levy and Notice of Your Right to a Hearing:** Generally, before property is seized, we have to send you this notice. If you don't pay your overdue taxes, make other arrangements to satisfy the tax debt, or request a hearing within 30 days of the date of this notice, we may seize your property.

**Summons:** A summons legally compels you or a third party to meet with the IRS and provide information, documents or testimony.

**Passport Actions:** The Department of State will not issue or renew a passport to any individual who has been certified by the IRS as having a seriously delinquent tax debt, and may revoke a passport previously issued to such individual.

## Collection actions in detail

**➔ Federal Tax Lien: A legal claim against property**
A lien is a legal claim against all your current and future property. When you don't pay your first bill for taxes due, a lien is created by law and attaches to your property. It applies to property (such as your home and car) and to any current and future rights you have to property.

**➔ Notice of Federal Tax Lien: Provides public notice to creditors that a lien exists**
A Notice of Federal Tax Lien gives public notice to creditors. We file the Notice of Federal Tax Lien so we can establish the priority of our claim versus the claims of other creditors. The Notice of Federal Tax Lien is filed with local or state authorities, such as county recorder of deeds or the Secretary of State offices.

If a Notice of Federal Tax Lien is filed against you, it may be reported by consumer credit reporting agencies. This can have a negative effect on your credit rating and make it difficult for you to receive credit (such as a loan or credit card). Employers, landlords and others may also use this information and not favorably view the fact that a Notice of Federal Tax Lien has been filed against you. However by law, there will be no filing of the Notice of Federal Tax Lien and no liens issued to collect an individual shared responsibility payment associated with the Affordable Care Act.

**What to do if a Notice of Federal Tax Lien is filed against you**
You should pay the full amount you owe immediately. The Notice of Federal Tax Lien only shows your assessed balance as of the date of the notice. It doesn't show your payoff balance or include our charges for filing and releasing the lien. To find out the full amount you must pay to have the lien released, call 1-800-913-6050 or 859-320-3526 if you are calling from outside of the United States. If you have questions, call the number on your lien notice or 1-800-829-1040 or visit www.irs. gov/Businesses/Small-Businesses-&-Self-Employed/Understanding-a-Federal-Tax-Lien, or view instructional videos at www.irsvideos.gov/Individual/IRSLiens.

**How to appeal a Notice of Federal Tax Lien**
Within five business days of the first filing of the Notice of Federal Tax Lien for a specific debt, we will send you a Notice of Federal Tax Lien Filing and Your Right to a Collection Due Process Hearing. You'll have until the date shown on the notice to request a Collection Due Process

hearing with the Office of Appeals. Send your Collection Due Process hearing request to the address on the notice. For more information, see Form 12153, *Request for a Collection Due Process or Equivalent Hearing.*

After your Collection Due Process hearing, the Office of Appeals will issue a determination on whether the Notice of Federal Tax Lien should remain filed, or whether it should be withdrawn or released. If you disagree with the determination, you have 30 days after it's made to seek a review in the U.S. Tax Court.

In addition to any Collection Due Process rights you may have, you may also appeal a proposed or actual filing of a Notice of Federal Tax Lien under the Collection Appeals Program.

**Reasons we will "release" a Federal Tax Lien**
A "release" of a Federal Tax Lien means that we have cleared both the lien for your debt and the public Notice of Federal Tax Lien. We do this by filing a Certificate of Release of Federal Tax Lien with the same state and local authorities with whom we filed your Notice of Federal Tax Lien. We will release your lien if:

- Your debt is fully paid,
- Payment of your debt is guaranteed by a bond, or
- You have met the payment terms of an Offer in Compromise which the IRS has accepted, or
- The period for collection has ended. (In this case, the release is automatic.)

For more information, see Publication 1450, *Instructions on How to Request a Certificate of Release of Federal Tax Lien.*

**Reasons we may "withdraw" a Notice of Federal Tax Lien**
A "withdrawal" removes the Notice of Federal Tax Lien from public record. The withdrawal tells other creditors that we're abandoning our lien priority. This doesn't mean that the federal tax lien is released or that you're no longer liable for the amount due.

We may withdraw a Notice of Federal Tax Lien if:

- You've entered into an Installment Agreement to satisfy the tax liability, unless the Agreement provides otherwise. For certain types of taxes, we routinely grant Notice of Federal Tax Lien withdrawal requests if you've entered into a direct debit installment agreement and meet certain other conditions,
- It will help you pay your taxes more quickly,
- We didn't follow IRS procedures,
- It was filed during a bankruptcy automatic stay period, or
- It's in your best interest and in the best interest of the government. For example, this could include when your debt has been satisfied and you request a withdrawal.

For more information, see Form 12277, *Application for Withdrawal of Filed Notice of Federal Tax Lien* or the instructional video at www.irsvideos.gov/Individual/IRSLiens/LienNoticeWithdrawal.

**How to apply for a "discharge" of a Federal Tax Lien from property**
A "discharge" removes specific property from the federal tax lein. There are several circumstances under which a discharge may be granted. For example, we may issue a Certificate of Discharge if you're selling property and the government receives its interest through the sale. For more information on whether you qualify for a discharge, see Publication 783, *Instructions on How to Apply for a Certificate of Discharge of Property from Federal Tax Lien.* To watch an instructional video about Publication 783, visit www.irsvideos.gov/Individual/IRSLiens.

**How to make the Federal Tax Lien secondary to other creditors ("subordination")**
A "subordination" is where a creditor is allowed to move ahead of the government's priority position. For example, if you're trying to refinance a mortgage on your home, but aren't able to because the federal tax lien has priority over the new mortgage, you may request that we subordinate our lien to the new mortgage. For more information on

Exh. C
Complaint

whether you qualify for a subordination, see Publication 784, *How to Prepare an Application for a Certificate of Subordination of Federal Tax Lien*. To watch an instructional video about Publication 784, visit www.irsvideos.gov/individual/IRSLiens.

**Appeal rights for withdrawal, discharge or subordination**

If your application is denied you will receive Form 9423, *Collection Appeal Request* and Publication 1660, *Collection Appeal Rights*, with an explanation of why your application was denied. If we deny your request for a withdrawal, discharge, or subordination, you may appeal under the Collections Appeals Program.

**➔ Levy: A seizure of property**

While a federal tax lien is a legal claim against your property, a levy is a legal seizure that actually takes your property (such as your house or car) or your rights to property (such as your income, bank account, retirement account or Social Security payments) to satisfy your tax debt.

We can't seize your property if you have a current or pending Installment Agreement, Offer in Compromise, or if we agree that you're unable to pay due to economic hardship, meaning seizing your property would result in your inability to meet basic, reasonable living expenses.

**Reasons we may seize ("levy") your property or rights to property**

If you don't pay your taxes (or make arrangements to settle your debt), we could seize and sell your property. We will not seize your property to collect an individual shared responsibility payment. We usually seize only after the following things have occurred.

- We assessed the tax and sent you a bill,
- You neglected or refused to pay the tax, and
- We sent you a Final Notice of Intent to Levy and Notice of Your Right to a Hearing at least 30 days before the seizure.

However, there are exceptions for when we don't have to offer you a hearing at least 30 days before seizing your property. These include situations when:

- The collection of the tax is in jeopardy,
- A levy is served to collect tax from a state tax refund,
- A levy is served to collect the tax debt of a federal contractor, or
- A Disqualified Employment Tax Levy (DETL) is served. A DETL is the seizure of unpaid employment taxes and can be served when a taxpayer previously requested a Collection Due Process appeal on employment taxes for other periods within the past 2 years.

If we serve a levy under one of these exceptions, we will send you a letter explaining the seizure and your appeal rights after the levy is issued.

**What you should do if your property is seized ("levied")**

If your property or federal payments are seized, call the number on your levy notice or 1-800-829-1040. If you're already working with an IRS employee, call him or her for assistance.

**Examples of property we can seize ("levy")**

- Wages, salary, or commission held by someone else. If we seize your rights to wages, salary, commissions, or similar payments that are held by someone else, we will serve a levy once, not each time you're paid. The one levy continues until your debt is fully paid, other arrangements are made, or the collection period ends, or the levy is released. Other payments you receive, such as dividends and payments on promissory notes, are also subject to seizure. However, the seizure only reaches the payments due or the right to future payments as of the date of the levy.
- Your bank account. Seizure of the funds in your bank account will include funds available for withdrawal up to the amount of the seizure. After the levy is issued, the bank will hold the available funds and give you 21 days to resolve any disputes about who owns the account before sending us the money. After 21 days, the bank will send us your money, and any interest earned on that amount, unless you have resolved the issue in another way.

- Your retirement account, including Qualified Pension, Profit Sharing, and Stock Bonus Plans under ERISA; IRAs, Retirement Plans for the Self-Employed (such as SEP-IRAs and Keogh Plans) and the Thrift Savings Plan. Depending on the terms of the plan a levy may attach to the funds in which you have a vested right.
- Your federal payments. As an alternative to the levy procedure used for other payments such as dividends and promissory notes, certain federal payments may be systemically seized through the Federal Payment Levy Program in order to pay your tax debt. Under this program, we can generally seize up to 15% of your federal payments (up to 100% of payments due to a vendor for property, goods or services sold or leased to the federal government). We will serve the levy once, not each time you are paid. The levy continues until your debt is fully paid, other arrangements are made, the collection period ends, or the IRS releases the levy. The federal payments that can be seized in this program include, but aren't limited to, federal retirement annuity income from the Office of Personnel Management, Social Security benefits under Title II of the Social Security Act (OASDI), and federal contractor/vendor payments.
- Your house, car, or other property. If we seize your house or other property, we will sell your interest in the property and apply the proceeds (after the costs of the sale) to your tax debt. Prior to selling your property, we will calculate a minimum bid price. We will also provide you with a copy of the calculation and give you an opportunity to challenge the fair market value determination. We will then provide you with the notice of sale and announce the pending sale to the public, usually through local newspapers or flyers posted in public places. After giving public notice, we will generally wait 10 days before selling your property. Money from the sale pays for the cost of seizing and selling the property and, finally, your tax debt. If there's money left over from the sale after paying off your tax debt, we will tell you how to get a refund.

**Property that can't be seized ("levied")**

Certain property is exempt from seizure. For example, we can't seize the following: unemployment benefits, certain annuity and pension benefits, certain service-connected disability payments, worker's compensation, certain public assistance payments, minimum weekly exempt income, assistance under the Job Training Partnership Act, and income for court-ordered child support payments.

We also can't seize necessary schoolbooks and clothing, undelivered mail, certain amounts worth of fuel, provisions, furniture, personal effects for a household, and certain amounts worth of books and tools for trade, business, or professions. There are also limitations on our ability to seize a primary residence and certain business assets.

Lastly, we can't seize your property unless we expect net proceeds to help pay off your tax debt.

**How to appeal a proposed seizure ("levy")**

You can request a Collection Due Process hearing within 30 days from the date of your Notice of Intent to Levy and Notice of Your Right to a Hearing. Send your request to the address on your notice. For more information, see Form 12153, *Request for a Collection Due Process or Equivalent Hearing*. At the conclusion of your hearing, the Office of Appeals will provide a determination. You'll have 30 days after the determination to challenge it in the U.S. Tax Court. If Collection Due Process rights aren't available for your case, you may have other appeal options, such as the Collection Appeals Program.

**Reasons we "release" a levy**

The Internal Revenue Code specifically provides that we must release a levy if we determine that:

- You paid the amount you owe,
- The period for collection ended prior to the levy being issued,
- It will help you pay your taxes,
- You enter into an Installment Agreement and the terms of the agreement don't allow for the levy to continue,

Exh. C
Complaint

- The levy creates an economic hardship, meaning we've determined the levy prevents you from meeting basic, reasonable living expenses, or
- The value of the property is more than the amount owed and releasing the levy won't hinder our ability to collect the amount owed.

We will also release a levy if it was issued improperly. For example, we will release a levy if it was issued:

- Against property exempt from seizure,
- Prematurely,
- Before we sent you the required notice,
- While you were in bankruptcy and an automatic stay was in effect,
- When the expenses of seizing and selling the levied property would be greater than the fair market value of the property,
- While an Installment Agreement request, Innocent Spouse Relief request, or Offer in Compromise was being considered or had been accepted and was in effect, or
- While the Office of Appeals or Tax Court was considering a collection due process case and the levy wasn't a Disqualified Employment Tax Levy to collect employment taxes, a state refund, a jeopardy levy, or to collect the tax debt of federal contractor.
- While the Office of Appeals or Tax Court is considering an appeal of the denial of innocent spouse relief.

**Reasons we may return seized ("levied") property**
We may return your property if:

- The seizure was premature,
- The seizure was in violation of the law,
- Returning the seized property will help our collection of your debt,
- You enter into an Installment Agreement to satisfy the liability for which the levy was made, unless the Agreement does not allow for the return of previously levied upon property.
- We didn't follow IRS procedures, or
- It's in your best interest and in the best interest of the government.

We may return property at any time if the property has not been sold. If we decided to return your property, but it's already sold, we will give you the money we received from the sale. You can file a request for return of seized money or money from the sale of seized property, generally up to 9 months after the seizure.

**How to recover seized ("levied") property that's been sold**
To recover your real estate, you (and anyone with interest in the property) may recoup it within 180 days of the sale by paying the purchaser what they paid, plus interest at 20% annually, compounded daily.

**If your property has been seized ("levied") to collect tax owed by someone else,** you may appeal the seizure under the Collection Appeals Program or file a claim under Internal Revenue Code section 6343(b), generally within 2 years of the seizure, or you may file a suit under Internal Revenue Code section 7426 for the return of the wrongfully seized property, generally within 2 years of the seizure. You may also appeal the denial of the request to return the wrongfully seized property under the Collection Appeals Program. For more information, see Publication 4528, *Making an Administrative Wrongful Levy Claim under Internal Revenue Code section 6343(b).*

**How to recover economic damages**
If we wrongfully seized your property, we lost or misplaced your payment, or there was a direct debit Installment Agreement processing error and you incurred bank charges, we may reimburse you for charges you paid. For more information, see Form 8546, *Claim for Reimbursement of Bank Charges.* If your claim is denied, you can sue the federal government for economic damages.

If we intentionally or negligently didn't follow Internal Revenue law while collecting your taxes, or you're not the taxpayer and we wrongfully seized your property, you may be entitled to recover economic damages. Mail your written administrative claim to the attention of

the Advisory Group Manager for your area at the address listed in Publication 4235, *Collection Advisory Group Addresses.* If you've filed a claim and your claim is denied, you can sue the federal government, but not the IRS employee, for economic damages.

➔ **Summons: Used to secure information**
If we're having trouble gathering information to determine or collect taxes you owe, we may serve a summons. A summons legally compels you or a third party to meet with an officer of the IRS and provide information, documents and/or testimony.

**If you're responsible for a tax liability and we serve a summons on you, you may be required to:**

- Testify,
- Bring books and records to prepare a tax return, and/or
- Produce documents to prepare a Collection Information Statement, Form 433-A or Form 433-B.

**If you can't make your summons appointment,** immediately call the number listed on your notice. If you don't call us and don't attend your appointment, we may sue you in federal district court to require you to comply with the summons.

**If we serve a third-party summons to determine your tax liability,** you'll receive a notice indicating that we're contacting a third party. Third parties can be financial institutions, record keepers, or people with information relevant to your case. We won't review their information or receive testimony until the end of the 23rd day after the notice was given. You also have the right to:

- Petition to reject ("quash") the summons before the end of the 20th day after the date of the notice, or
- Petition to intervene in a suit to enforce a summons to which the third party didn't comply.

**If we issue a third-party summons to collect taxes you already owe,** you won't receive notice or be able to petition to reject or intervene in a suit to enforce the summons.

➔ **IRS action affecting passports**
The Fixing America's Service Transportation (FAST) Act of 2015, enacted by Congress and signed into law on December 4, 2015, requires the Internal Revenue Service to notify the State Department of taxpayers certified as owing a seriously delinquent tax debt. Seriously delinquent tax debt means an unpaid, legally enforceable federal tax debt of an individual totaling more than $51,000 (including penalties and interest) for which a Notice of Federal Tax lien has been filed and all administrative remedies under IRC § 6320 have lapsed or been exhausted, or a levy has been issued. If you are individually liable for tax debt (including penalties and interest) totaling more than $51,000 and you do not pay the amount you owe or make alternate arrangements to pay, we may notify the State Department that your tax debt is seriously delinquent. The State department generally will not issue or renew, and may revoke, your passport after being notified of your seriously delinquent tax debt. For additional information on passport certification visit www.irs.gov/passports.

## Information for Taxpayers assigned to a Private Collection Agency

Your delinquent account could be assigned to a Private Collection Agency. We will notify you of the assignment before the Private Collection Agency contacts you and will send you Publication 4518, *What You Can Expect When the IRS Assigns You to a Private Collection Agency.* The notice from us will contain the name of the Private Collection Agency we assigned your account to, along with the Private Collection Agency's address and phone number. To protect your privacy, our notice will also provide you with a unique ten-digit Taxpayer Authentication Number. Be sure to save this number. The Private Collection Agency will only work with you on your delinquent accounts after authenticating your identity using your Taxpayer Authentication Number. Our contracts with Private Collection Agencies

Exh. C
Complaint

requires that they provide you with quality service and equitable treatment. For more information about the private debt collection program, visit www.irs.gov/businesses/small-businesses-self-employed/private-debt-collection.

## Information for employers: Collection of employment tax

### About employment taxes

Employment taxes are the amount you must withhold from your employees for their income tax and Social Security/Medicare tax (trust fund taxes) plus the amount of Social Security/Medicare tax you pay for each employee. Federal unemployment taxes are also considered employment taxes.

Employment taxes are incurred at the time you pay wages and generally paid in semi-weekly or monthly deposits. You must use electronic funds transfer to make all federal tax deposits, generally through the Electronic Federal Tax Payment System (EFTPS). See Publication 966, *Electronic Federal Tax Payment System: A Guide To Getting Started*.

### What we will do if you don't pay your employment taxes:

- Assess a failure to deposit penalty, up to 15% of the amount not deposited in a timely manner.
- We may file a Notice of Federal Tax Lien and/or take levy action
- We may propose a Trust Fund Recovery Penalty assessment against the individuals responsible for failing to pay the trust fund taxes.
- We may refer this matter to the Department of Justice for civil collection or criminal prosecution for failure to adhere to the reporting and payment requirements mandated by the Internal Revenue Code.

### About trust fund taxes

Trust fund taxes are the income tax, Social Security tax, and Medicare tax (trust fund taxes) withheld from the employee's wages. They are called trust fund taxes because the employer holds these funds "in trust" for the government until it submits them in a federal tax deposit. Certain excise taxes are also considered trust fund taxes because they are collected and held in trust for the government until submitted in a federal tax deposit. For more information, see Publication 510, *Excise Taxes*.

To encourage prompt payment of withheld employment taxes and collected excise taxes, Congress has passed a law that provides for the Trust Fund Recovery Penalty.

For more information on employment taxes or trust fund taxes, see Publication 15, *Circular E, Employer's Tax Guide*.

### Trust Fund Recovery Penalty

The Trust Fund Recovery Penalty is a penalty that is assessed personally against the individual or individuals who were responsible for paying the trust fund taxes, but who willfully did not do so. The amount of the penalty is equal to the amount of the unpaid trust fund taxes. For additional information, please see Notice 784, Could You Be Personally Liable for Certain Unpaid Federal Taxes? or visit www.irs.gov/TFRP.

**If the Trust Fund Recovery Penalty is proposed against you,** you'll receive a Letter 1153 and Form 2751, *Proposed Assessment of Trust Fund Recovery Penalty*.

**If you agree with the penalty,** sign and return Form 2751 within 60 days from the date of the letter. To avoid the assessment of the Trust Fund Recovery Penalty, you may also pay the trust fund taxes personally.

**If you disagree with the penalty,** you have 10 days from the date of the letter to let us know that you don't agree with the proposed assessment, have additional information to support your case, or want to try to resolve the matter informally. If you can't resolve the disagreement with us, you have 60 days from the date of the Letter

1153 to appeal with the Office of Appeals. For more information, see Publication 5, *Your Appeal Rights and How to Prepare a Protest if You Don't Agree*.

**If you don't respond to the letter,** we will assess the penalty amount against you personally and begin the collection process to collect it. We may assess this penalty against a responsible person regardless of whether the company is still in business.

## Additional information

### Innocent Spouse Relief

Generally, both you and your spouse are responsible, jointly and individually, for paying any tax, interest, or penalties on your joint return. If you believe your current or former spouse should be solely responsible for an incorrect item or an underpayment of tax on your joint tax return, you may be eligible for Innocent Spouse Relief. This could change the amount you owe, or you may be entitled to a refund. You must submit Form 8857, *Request for Innocent Spouse Relief*, no later than two years from the date of our first attempt to collect the outstanding debt, except for requests for equitable relief under Internal Revenue Code section 6015(f). For additional information, see Publication 971, *Innocent Spouse Relief*

### Representation during the collection process

During the collection process, or an appeal before the IRS Office of Appeals you can be represented by yourself, an attorney, a certified public accountant, an enrolled agent, an immediate family member, or any person enrolled to practice before the IRS. If you're a business, full-time employees, general partners, or bona fide officers can also represent you.

To have your representative appear before us, contact us on your behalf, and/or receive your confidential material, file Form 2848, *Power of Attorney and Declaration of Representative*.

To authorize someone to receive or inspect confidential material, file Form 8821, *Tax Information Authorization*.

### Sharing your tax information

During the collection process, we're authorized to share your tax information in some cases with city and state tax agencies, the Department of Justice, federal agencies, people you authorize to represent you, and certain foreign governments (under tax treaty provisions).

### We may contact a third party

The law allows us to contact others (such as neighbors, banks, employers, or employees) to investigate your case. You have the right to request a list of third parties contacted about your case.

### Past Due Tax Returns

File all tax returns that are due, regardless of whether or not you can pay in full. File a past due return at the same location where you would file an on-time return.

If you do not voluntarily file your individual income tax return you risk losing your refund and we may file a substitute return for you. This return might not give you credit for deductions and exemptions you may be entitled to receive. We may send you a Notice of Deficiency proposing a tax assessment. Filing a past due return after the Notice of Deficiency was sent does not extend the 90 day period for filing a petition to the United States Tax Court. However, the past due return will be considered in determining whether there will be a reduction in the amount of tax increase previously proposed in the Notice of Deficiency. If you do not file a petition in Tax Court and a tax increase has been determined, we will proceed with our proposed assessment as a substitute return. If the IRS files a substitute return, it is still in your best interest to file your own tax return to take advantage of any exemptions, credits and deductions you are entitled to receive. The IRS will generally adjust your account to reflect the correct figures.

Exh. C
Complaint

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.



